(February 10, 1913.)

## FRANK BRESHEARS et al., Respondents, v. W. T. CALLENDER, Appellant.

[131 Pac. 15.]

FRAUD—RESCISSION OF CONTRACT—SUFFICIENCY OF COMPLAINT—ADMISSION OF EVIDENCE—INSTRUCTIONS—SUFFICIENCY OF EVIDENCE.

1. It is a general rule of law that a party defrauded in a bargain may, on discovering the fraud, either rescind the contract and demand back what has been received under it, or he may affirm the bargain and sue and recover damages for the fraud. If he elects the former course, he must not sleep on his rights, but must move promptly.

2. A party electing to rescind a contract on the ground of fraud and misrepresentation, must place the other party as nearly as pos-

sible in *statu quo*. To do this, if he has received anything under the contract, whether it be property or securities, he must restore it. This rule, however, does not apply to all cases, especially where property is worthless, and where the defrauded party has so dealt with the subject matter of the contract that it has become impossible to put the other in *statu quo*.

3. Where an action is brought to rescind a contract and recover what the party suing parted with or its value, and to restore what was received, and the complaint alleges that the rescission of the contract resulted from the fact that the defendant had made statements at the time the contract of exchange was made that were false and fraudulent and known to the defendant to be false and fraudulent, and that such statements were relied upon by the plaintiff, and by reason of fraud and deceit the plaintiff was induced to make the contract which resulted in the exchange of the property from one to the other, the complaint is sufficient to state a cause of action.

4. Where a complaint states that a contract was entered into by reason of certain representations made of the existence of certain facts, and the plaintiff relies upon such representations, which are the inducement which led the plaintiff to enter into said contract, and such representations are made directly affecting the subject matter of the contract and without which the contract would not have been made, then in that case the representations are material.

5. A party to a contract may testify as a witness to the fact that he would not have entered into the transaction had he known the truth or had not the representations been made, where such facts and statements are peculiarly within the knowledge of the witness.

6. The general rule in this state is that a judgment will not be reversed for the reason that an instruction does not state within its provisions all the law applicable to the facts of the case, where it appears that other instructions given in connection with the objectionable instruction state the law applicable to the facts of the case when taken into consideration with the instruction to which the objection is made, and the jury has not been misled or misdirected, when all the instructions are considered.

7. Where instructions are requested and refused, and such refusal is assigned as error upon appeal, this court will not reverse the judgment where it appears that the trial court gave to the jury instructions which state the essence and substance of the instructions offered and refused.

8. The evidence in this case examined, and *held*, that the plaintiffs were led to enter into and were induced to make said contract by the examination of the plaintiffs made before the contract was

entered into as to the conditions and validity of the property exchanged by the terms of the contract, and that there is no evidence supporting the verdict and judgment that the plaintiffs relied wholly upon the representations alleged to have been made by defendant, and that the plaintiffs were in no way misled or deceived by any statements of the defendant.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. Ed. L. Bryan, Judge.

An action to recover damages and rescind a contract on account of fraud and misrepresentation. *Reversed.*

Finley Monroe and Rice, Thompson & Buckner, for Appellant.

The amended complaint contains no allegation that the defendant in this action anywhere represented the bonds to be good, or made any representations with reference to the security for the bonds, or any representation whatever with regard to the bonds.

There is absolutely no allegation in the amended complaint that the bonds are worthless. (*Kemmerer v. Pollard,* 15 Ida. 34, 96 Pac. 206.)

The complaint purports to contain two allegations of alleged false and fraudulent representation, but does not connect this alleged misrepresentation with any attempt by defendant to boost the value of the bonds, and these allegations, standing alone, are therefore immaterial. (*Crooks v. Eldridge & Higgins Co.,* 64 Ohio St. 195, 60 N. E. 203.)

The complaint does not show why the plaintiffs acted upon such representation without investigating for themselves, nor does it show that the defendant made any effort to induce plaintiffs to forbear inquiry concerning the property. (*Brown v. Bledsoe,* 1 Ida. 746; *Page v. Parker,* 43 N. H. 363, 80 Am. Dec. 172.)

The court erred in permitting plaintiff Campbell to testify to what defendant said with reference to the interest coming due Feb. 1, 1910, over the objection of the defendant, for the reason that it had reference to a promise merely, and some-

thing that would take place in the future, and was not a statement as to present facts. (*Ray County Sav. Bank v. Hutton,* 224 Mo. 42, 123 S. W. 47; *Pollard v. McKenney,* 69 Neb. 742, 96 N. W. 679, 101 N. W. 9; *Beard v. Bliley,* 3 Colo. App. 479, 34 Pac. 271.)

The misrepresentation must be material, that is, it must relate to some matter so substantial and important as to influence the action of the party to whom the representation is made. (*Allison v. Jack,* 76 Iowa, 205, 40 N. W. 811; *Furneaux v. Webb,* 33 Tex. Civ. App. 560, 77 S. W. 828; *Davis v. Davis,* 97 Mich. 419, 56 N. W. 774; *Dingle v. Trask,* 7 Colo. App. 16, 42 Pac. 186; *Palmer v. Bell,* 85 Me. 352, 27 Atl. 250; *Dawe v. Morris,* 149 Mass. 188, 14 Am. St. 404, 21 N. E. 313, 4 L. R. A. 158; 14 Am. & Eng. Ency. of Law, 59.)

W. A. Stone and E. J. Dockery, for Respondents.

Testimony of plaintiff that he would not have entered into the transaction had he known the truth or had not the representations been made is competent, as being the statement of a fact peculiarly within the knowledge of the witness and hardly susceptible of proof in any other way. (20 Cyc. 117; *Browning v. Nat. Capitol Bank,* 13 App. Cas. (D. C.) 1; *Mann v. Taylor,* 78 Iowa, 355, 43 N. W. 220; *Stubly v. Beachboard,* 68 Mich. 401, 36 N. W. 192.)

The defendant made positive assertions of material matters which proved to be untrue, with the intent that plaintiffs should rely upon them, but now seeks to avoid the responsibility for his wrong by the plea that plaintiffs did not prove he knew them to be false. (Cooley on Torts, 500, 501.)

STEWART, J.—This action was instituted in the district court of Canyon county by plaintiffs, respondents here, for the recovery of $3,600, alleged to be the value of a certain German coach horse stallion which plaintiffs traded to the defendant for six first mortgage bonds of the Easter Gold Mining & Milling Company, Ltd., of the par value of $500 each, with interest coupons attached representing interest at the

rate of ten per cent per annum payable annually on the 1st day of February of each year.

The action is based upon a transaction occurring on or about the 15th day of January, 1910, and it is alleged in the amended complaint that the defendant represented that the coupons of 1908 and 1909 had been promptly paid by the company, and that the interest due on said bonds upon February 1, 1910, would be promptly paid, and that such statements made by the defendant were false, and that interest due on said bonds on February 1, 1908, and February 1, 1909, had not been paid, and said statements were so made by the defendant with the purpose and intent to deceive and mislead the plaintiffs; that the plaintiffs relied upon the truth of such representations and statements and believed the same to be true, and sold and exchanged the horse and took as payment therefor the said six bonds of the Easter Gold Mining & Milling Company; that said statements were made to plaintiffs by the defendant in order to influence and induce the plaintiffs to purchase the said six bonds of the company and to give in exchange therefor the said horse; and that after the interest on said bonds for the year ending February 1, 1910, had become due and payable, and plaintiffs had presented the said coupons representing the interest due on said bonds for said year for payment to the treasurer of the company, the payment of said interest coupons was by said treasurer refused, and said treasurer has ever since said date failed and refused to pay the same; that said horse so exchanged by plaintiffs to the defendant in the purchase of said bonds was of the reasonable value of $3,600, and by reason of the false and fraudulent representations of the defendant as to the fact that interest on said bonds due February 1, 1908, and February 1, 1909, had been promptly paid, and by reason of the purchase of said bonds by giving in exchange therefor the said horse, plaintiffs had been damaged in the sum of $3,600, and that said damage was occasioned by said false and fraudulent representations; that plaintiffs bring the said bonds with interest coupons attached thereto into court, and offer to return and deliver the said property to the defendant.

The amended complaint upon which the case was tried was not verified, and the defendant, appellant here, filed an answer to this complaint, and generally and specifically denied all the allegations of the complaint. The cause was tried to a jury and a verdict rendered in favor of the plaintiffs for the sum of $3,000. A judgment for plaintiffs was rendered accordingly. This appeal is from the judgment.

Thirteen errors are assigned, and we will consider them in order. The first is, that the trial court erred in overruling the objection of the defendant to the introduction of any testimony, for the reason that the amended complaint does not state a cause of action. This alleged error is based upon the allegations of the complaint. Counsel for appellant contend that the complaint ''contains no allegation that the defendant anywhere represented the bonds to be good or made any representations with reference to the security for the bonds, or any representation whatever with regard to the bonds.'' The allegations with reference to misrepresentations found in the complaint are that the defendant represented that the coupons of 1908 and 1909 had been promptly paid by the company, and that the interest due on said bonds upon February 1, 1910, would be promptly paid, and that such statements made by the defendant were false, and that interest due on said bonds on February 1, 1908, and February 1, 1909, had not been paid, and said statements were made by the defendant with the purpose and intent to deceive and mislead the plaintiffs. It is also alleged in the complaint that after the interest on said bonds for the year ending February 1, 1910, had become due and payable, the plaintiffs presented the said coupons representing the interest due on the bonds for said year for payment, and such payment was refused.

The contention of counsel for appellant is, that the alleged representation that the interest coupons of February 1, 1908, and February 1, 1909, had been paid is immaterial, for the reason that it is not alleged as a basis for representing that the bonds were of any value, nor is it connected in any way with such a representation, nor is it alleged that defendant intended to represent by said statement that the bonds were

of value, and that the statement that interest coupons had been paid for two years is immaterial, as whether they had been paid could in no way benefit the plaintiffs in this case, nor could their not being paid in any way be detrimental to the plaintiffs, for they had no interest in the detached coupons.

It is true that they had no interest particularly in the payment of the interest coupons of February 1, 1908, and 1909, and the plaintiffs made no allegations of any particular interest in the payment of said interest coupons, other than the fact that such payments were made, and the appellants no doubt made the inquiry and the defendant made the statement, if made, with a view of judging the probable value of the bonds. The fact that the interest had been paid in 1908 and 1909, and the statement that the interest due on February 1, 1910, would be paid promptly may have satisfied the plaintiffs that the bonds had a value sufficient to be a consideration for the transfer of the horse. From the allegations of the complaint it is apparent that the plaintiffs relied upon the truth of such representations and statements and believed the same to be true, and sold and exchanged the horse and took as payment therefor the bonds; and it was these representations as to the payment of interest coupons that were relied upon by the plaintiffs in accepting the bonds in exchange for the horse, as alleged in the complaint. It was, upon that ground, and for the fraud that occurred by such false and deceitful representations that plaintiffs elected their remedy, which the law provides for damages based upon fraud and deceit.

The remedies announced by the authorities in such cases are as follows:

"Rescinding Contract for Fraud: It is a general rule that a party defrauded in a bargain may, on discovering the fraud, either rescind the contract and demand back what has been received under it, or he may affirm the bargain and sue and recover damages for the fraud. If he elects the former course, he must not sleep on his rights, but must move promptly. No rule is better settled than this, that equity will refuse

relief where the delay in seeking redress has been so considerable that laches is fairly imputable, and both at law and in equity long acquiescence with full knowledge of the fraud will be deemed a waiver of the right to rescind. . . . . So, dealing with what has been acquired by the contract in a manner inconsistent with an intention to rescind will be deemed a waiver of the right; as where corporation shares which the party finds have been fraudulently sold to him, are afterward put by him on the market. The party electing to rescind must also place the other party as nearly as possible in *statu quo*. To do this, if he has received anything under the contract, whether it be property or securities, he must restore it.'' (Cooley on Torts, p. 962.)

There are exceptions to this general rule under the latter statement of the authority, where the property received is worthless, but the burden in such a case is on the party who has failed to restore it. Another exception is where the defrauded party has so dealt with the subject matter of the contract that it has become impossible to put the other in *statu quo*. In such cases a suit at law for damages will then be found to be the only remedy.

A very well-considered case upon the election of remedies where a person has been induced to enter into a contract by fraud is announced by the supreme court of Oregon in the case of *Scott v. Walton*, 32 Or. 460, 52 Pac. 180, in which that court, through Justice Bean, holds: ''A party who has been induced to enter into a contract by fraud has, upon its discovery, an election of remedies. He may affirm the contract and sue for damages, or disaffirm it, and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received

by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract.''

From the allegations in this case it is apparent that the respondents made their election to rescind the contract and restore what they had received and recover what they parted with, or its value, and such rescission of the contract resulted from the fact, as alleged in the complaint, that the appellant made statements at the time the contract of exchange was made that were false and fraudulent and known to be so by appellant, which were relied upon by the respondents, and by reason of such fraud and deceit the respondents were induced to make the contract which resulted in the exchange of property from one to the other.

In the case of *Kemmerer v. Pollard,* 15 Ida. 34, 96 Pac. 206, this court very fully discussed the pleadings and representations in an action to recover damages on the grounds of deceit and false and fraudulent representations, and in that case this court held: ''In an action by the vendee of personal property for deceit and false and fraudulent representations made by the vendor, upon the sale of such property, the complaining party must allege the particulars in which the representations and warranty were false and the extent and nature of the falsity and deception, so that the court may determine therefrom whether it was of a material and essential fact or immaterial and a matter of opinion and belief. It must also be alleged that the representation was false and fraudulent, and that the purchaser believed and relied upon the same and purchased on the strength of such false and fraudulent representation.''

The doctrine announced in that case we think is correct, and that the complaint in the present case is sufficient under the rule thus announced. The plaintiffs and defendant were exchanging from the plaintiffs to the defendant a horse; the defendant returned in exchange the six bonds. It is alleged that the defendant represented to the plaintiffs that the interest maturing previous to the time of the contract had been paid and the coupons taken up, and that the interest due a few days after the contract was made would be paid. It

is also alleged that such representations were false and fraudulent, and that the plaintiffs believed and relied on the same and made the exchange because of such false and fraudulent representations.  The particulars in which the representations were false and the extent and nature of the falsity and deception are that the interest coupons maturing before the contract was made were never paid, and that the interest due a few days after the contract was made was not promptly paid, and that the company executing the bonds refused to pay the same.  These, in our judgment, were material and essential facts, and were not matters of opinion and belief.

They were statements which the plaintiffs had a right to believe, that the bonds were of value, and that the interest which would mature in the future would be paid according to the interest coupons, and the facts alleged are clearly within the rule announced above by this court.

The author, in 14 Am. & Eng. Ency. of Law, p. 60, lays down two rules with reference to the materiality of a representation: "Whether a representation was material or not must necessarily depend upon the facts and circumstances of the particular transaction; and no very satisfactory general rule can be laid down for determining the question. . . . . It may be said generally that representations as to a fact directly affecting the subject matter of a contract, and without which the contract would not have been made, are material."

The rule here announced by the author specially applies to the representations alleged and upon which the evidence was taken in this case; for the purpose of showing the fraud relating to a mere material fact affecting the subject matter of the contract and without which the contract would not have been made.

There are no facts alleged in the complaint which impose any duty upon the plaintiffs, at the time the contract was made, to ascertain the facts as to whether the interest for the years 1908 and 1909 had been paid.  It is alleged that the payment of the interest coupon due on the 1st day of February, 1910, was demanded at the time it was due and thereafter, and the company refused to pay the same.

The second error urged is, that the court erred in permitting a witness to testify to what the defendant said with reference to the payment of the interest coming due the 1st of February, 1910. Under the allegations of the complaint, we think this evidence was proper. What this witness was called upon to testify to were statements made by the defendant at the time the contract was made. They were statements made as an inducement which led the plaintiffs to make the contract. The bonds were exhibited to the plaintiffs and the coupons for the years 1908 and 1909 were detached, and the plaintiffs asked the defendant whether those coupons had been paid. This evidence was in support of the value and integrity of the bonds, as it is alleged in the complaint that the plaintiffs relied upon such statements. These circumstances and the knowledge that interest would fall due soon, on February 1, 1910, influenced the plaintiffs in believing the truth of the defendant's statement, that the interest due February 1, 1910, would be paid.

20 Cyc., at p. 117, announces the rule as follows: "By the weight of authority, testimony of plaintiff that he would not have entered into the transaction had he known the truth or had not the representations been made is competent as being the statement of a fact peculiarly within the knowledge of the witness and hardly susceptible of proof in any other way, and this notwithstanding the objection that the testimony is a mere conclusion."

In the case of *Watson v. Molden*, 10 Ida. 570, 79 Pac. 503, this court in discussing a similar question held: "Where M. states to W. that certain things pertaining to the sale of shares of stock in a canal company are true, also facts pertaining to the sale of his interests in certain lands are true, and is informed by W. that he will rely upon his statements, and purchases such shares of stock and the interest of M. in the land wholly relying upon the representations of M., and such statements are afterward found to be false and resulted in inducing W. to purchase. Held, that M. must respond in damages for his false and fraudulent statements."

There was no error in the court's admitting such evidence.

The next error assigned for reversal is instruction No. 3, given by the trial court, and to which the appellant excepted: "If you believe from the evidence that the defendant, W. T. Callender, made false statements to the plaintiffs, or either of them, as to the fact that the interest coupons on the bonds described in the complaint had been paid, and that the interest coupons about to mature would be paid by the company issuing such bonds, and if you believe from the evidence that the plaintiffs relied on such statements made by the defendant and were induced thereby to part with the stallion described in the complaint, then the plaintiffs would be entitled to recover such damages as the evidence shows they have sustained, if any."

The objection to this instruction is, that it does not state that the damages should result to the plaintiffs by reason of the false and fraudulent representations, and that the instruction is ambiguous and does not state the law, and in no way refers to the materiality of the representations, and that the instruction in no way makes a condition as to whether these statements were made with the knowledge of the defendant that they were false.

This instruction, if standing alone, would perhaps be ambiguous, and would not state the law upon the right to recover in an action of this kind, but when taken with the other instructions that were given, we think the error is not one which should justify a reversal. In other instructions the court instructed the jury that to entitle the plaintiff to recover they must not only show by preponderance of evidence that the representations were made and that they were false and fraudulent, but they must also show affirmatively by preponderance of evidence that the plaintiffs have been injured thereby; that they were in some way placed in a worse condition than they would have been had the statements been true; that the defendant Callender made false statements to the plaintiffs to the effect that the interest coupons on the bonds described in the complaint had been paid, and that the interest coupons about to mature would be paid by the com-

pany issuing such bonds, and that if they believed from the evidence that the plaintiffs relied upon such statements made and were induced thereby to part with the stallion described in the complaint, then the plaintiffs would be entitled to recover such damages as the evidence shows they sustained, if any; and if they believed from the evidence that the defendant made the representations, and that the plaintiffs made inquiry before accepting said bonds and knew that such representations were false, then the plaintiff could not recover in the action.

These instructions, when taken in connection with instruction No. 3, cure the objections urged for reversal. It is the general rule adopted by this court that when an instruction does not state within its provisions all the law applicable to the facts of the case, a judgment cannot be reversed for that reason, where it appears that other instructions given in connection with the objectionable instruction state the law applicable to the facts of the case when taken into consideration with the instruction to which the objection is made, and where the jury has not been misled or misdirected when all the instructions are considered. (*Harvey v. Alturas Gold Min. Co., Ltd.,* 3 Ida. 510, 31 Pac. 819; *Rowley v. Stack-Gibbs Lumber Co.,* 19 Ida. 107, 112 Pac. 1041; *Just v. Idaho Canal & Imp. Co.,* 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381.)

Error is assigned on account of the trial court's refusing to give to the jury a number of instructions offered by defendant. Several of the instructions tendered, and to which exceptions were taken, state a correct rule of law, and it would be error to refuse to give the same to the jury, were it not for the fact that the substance and essence of each of said instructions had been given by the trial court in its instructions to the jury. The particular instructions are those which relate to the misrepresentations made by the defendant to the plaintiffs at the time the contract of exchange of property was made, and which have been discussed above in dealing with the sufficiency of the allegations of the complaint.

As an illustration we quote instruction No. 2: "The jury are instructed that to constitute fraud, a misrepresentation

must be as to a material fact; a representation in relation to a fact that is not material to a contract, though it may be false and known to be false by the person making it, and though it may be acted upon by the other party, is not fraud.''

And likewise, instruction No. 4: ''That if a misrepresentation is not material, a person has no right to act upon it, and if he does he is not entitled to relief or redress on the grounds of fraud; the question is not whether the person to whom the representation was made deems it material, but the question is whether it was in fact material, and if the defendant in this case made representations which were false, and which at the time they were made he knew to be false, and if you find that such representations are not material and that the plaintiffs in this case have no right to act upon them, the plaintiffs cannot recover.''

The trial court did not follow this exact language in speaking of the materiality of the false representations, as desired by the instructions offered, but did in fact present to the jury the essence of such instructions, for the court advised the jury, in instruction No. 1, that a mere fraudulent representation is not of itself actionable. To entitle the plaintiffs to recover, they must not only show by preponderance of evidence that the representations were made, and that they were false and fraudulent, but they must also show affirmatively by preponderance of evidence that they have been injured thereby; that they are in some way placed in a worse condition than they would have been had the statements been true. And also that if the defendant made the false statements to the plaintiffs, or either of them, as to the fact that the interest coupons on the bonds described in the complaint had been paid, and that the interest coupons about to mature would be paid by the company issuing such bonds, and that if they further believed from the evidence that the plaintiffs relied on such statements made by the defendant and were induced thereby to part with the stallion described in the complaint, the plaintiffs would be entitled to recover such damages as the evidence showed they have sustained, if any.

The court further instructed the jury that if they found by the evidence that the plaintiffs did not rely upon the statement of the defendant with reference to the bonds and the interest thereon, and made inquiry with reference to the payment of interest, and that they relied upon such information, they could not recover.

From the instructions given it clearly appears that the jury were instructed that the representations were in fact material, and were the influential inducement which caused the contract to be made, and that the defendant made the representations which were false, and at the time he made the same he knew them to be false; and if they were not material that the plaintiffs had no right of action.

We find no error in the court's refusing to give to the jury the instructions offered by the defendant.

With reference to the damages allowed in this case, we mention the fact that this court has previously called attention to the remedy in actions of this kind and the right to recover damages.

We now come to the real and difficult question embraced in errors 11 and 12: Does the evidence sustain the allegations of fraud, and whether the evidence as a whole is sufficient to justify the verdict?

The jury by their verdict found that the defendant made false statements to the plaintiffs as to the fact that the interest coupons on the bonds described in the complaint had been paid, and that the interest about to mature would be paid by the company issuing such bonds, and that the plaintiffs relied upon such statements made by the defendant and were induced thereby to part with the stallion described in the complaint. The evidence as to whether the defendant made the statement that the interest coupons on the bonds had been paid for the years 1908 and 1909, and that the interest coupons which would mature on February 1, 1910, would be paid, is directly in conflict. One of the plaintiffs, D. D. Campbell, who was the general manager of the copartnership doing business under the firm name and style of the German Coach Horse Company, and the owner of the horse exchanged, and

Henry Newman, agent of the plaintiffs, and the person who brought the parties together, both testify that these representations were made, and that such representations were the inducement which led the plaintiffs to make the contract of exchange. The defendant denied the representations and testified that Newman introduced the defendant to Campbell, one of the plaintiffs, and Campbell asked what he had, and the defendant told him six bonds of the Easter Gold Mining & Milling Company, and Campbell asked him if he had one with him, and he said yes, and gave one of the bonds to him to look at. Defendant testifies: "He said, 'Where is the interest paid?' I said, 'They are to be paid at the First National Bank, Emmett.' 'When are they due?' I said, 'I think the 1st of February.' He looked on the bond; I think the bond made the statement—that is the time. I asked him how many of them he would want for his horse. 'Well,' he said, 'It was a trade, figured on about $3,000 in the trade.' I told him I would give him six of those bonds for the horse. He said, 'Is the interest paid, or has the interest been paid for those coupons that are torn off the bond?' I said, 'I don't know.' He said, 'Will the next interest be paid?' I said, 'I don't know. I told him Mr. Hayes was the treasurer and Mr. Monroe was secretary, and by calling them up he could find out whether the interest in the past had been paid and whether the future would be or not, as I did not know anything about it; the bonds were not mine, and I had no interest in the company in any way; when the trade was made the bonds belonged to my father; that I had no interest in the bonds. I offered him the six bonds, we to retain the coupons that were coming due in February; retain them for my father. I know I explained. I was only there a few minutes and I said, 'If there is anything further call me up,' and left the bond with him. He asked me if I wanted a receipt and I said no, and I went home, and as I was going along the road about a mile from my place a neighbor called me in and said that there was a telephone message for me from Caldwell, and long distance connected us with Mr. Campbell or Mr. Newman, I am not positive. I know his voice, but

I understood the name Campbell. He said, 'If you leave those coupons attached, it is a trade.' I said, 'Deliver the horse in Emmett, and a man will deliver the horse and accept the other five bonds, and the trade will be closed.' He said, 'I will,' and the next day Mr. Newman came with the horse and I turned over the bonds to him, and I never heard anything more about it for six or eight months.''

Hayes, who was cashier of the First National Bank of Emmett, testified that he had a call over the phone by Campbell, and he asked him about the bonds of the company. "He asked me if they were good, and said he had a chance to trade for some of them, and wanted to find out if they were any good, or something to that effect. I told him they were backed up by the company's holdings at Pearl, the mines and the mill; that I was unable to tell him how good they were. He asked me if the interest had been paid on them as it came due, and I said I had paid some of the interest coupons in money, and I referred him to Mr. Monroe, secretary of the company, because he kept more records. . . . . At the time the inquiry was made, there was at least, up to that time, $7,000 worth of interest coupons outstanding and matured for two years.''

Campbell, one of the plaintiffs, testified that he had negotiations with Callender, started by Henry Newman, who brought Callender into the bank of Campbell in January. "And Newman told me he had some mining stock which he would like to trade for a horse, and Callender pulled out the mining stock and the coupons were taken off for two years before and I asked him if the interest had been paid, and we got to talking about it, and the question came up about the interest that was due or would be due February 1st, and he did not want to give up the interest that was due on the bonds; he wanted to hold that. And afterward Newman came to the bank and told me that they would give the bonds for the horse with the interest included that was due. At the time the negotiations were going on the defendant told me that the coupons would be paid at the bank when presented. I was then acting as general manager of the company. Cal-

lender made a statement about the coupons that had matured in 1908 and 1909, and the amount of the interest due February 1, 1910, amounted to $300.''

This witness also testified that after Callender had had the conversation with Campbell in the bank at Caldwell and had returned to Emmett, that he, Campbell, telephoned to Monroe, the secretary of the company, and that such telephonic communication was at the request of the plaintiffs, after the proposition of Callender had been submitted to the plaintiffs for consideration; and that he called the secretary for the purpose of getting the information with reference to the bonds and the interest, and it was made on the same day that Callender was in Caldwell. The witness says that he knew Monroe's relations with the company and that he was the secretary, and that when he called him up he knew that Monroe had information as to whether or not the bonds were good.

From this evidence it appears that the plaintiffs in making the contract did not rely entirely, if at all, upon the statements made by Callender with reference to the payment of the interest past due and the payment of the interest soon to mature, on February 1, 1910, but that they communicated with the secretary of the company and likewise with Hayes the cashier of the First National Bank, where the company did business, and made inquiry of such parties with reference to matters which affected the value of such bonds, and these inquiries no doubt were made for the purpose of the plaintiffs' determining whether they would accept the bonds in exchange for the horse.

It is a general rule of law which is followed in the courts of the various states that where a person knowingly or recklessly, without knowledge of its truth or falsity, makes fraudulent misrepresentations of material facts for the purpose of inducing another to enter into a contract, and the other person, in reliance on the representations, enters into the contract and thereby sustains loss, the person making the representations is liable to the person relying thereon, in an action for deceit. (20 Cyc., p. 44.)

Under this rule as applied to the present case, before the plaintiffs can recover in this action, the burden of proof is upon the plaintiffs to prove that the defendant made fraudulent representations of a material fact for the purpose of inducing the plaintiffs to enter into the contract of sale, and that by reason of such representations the plaintiffs entered into the contract of sale and thereby sustained loss. The evidence, however, shows that the plaintiffs did not rely upon such representations. After such representations are alleged to have been made, the plaintiffs proceeded to investigate the character of the bonds and their validity, and the probability of the makers of such bonds complying with the terms and conditions of the bonds as to the payment of the interest that had matured prior to the making of the contract, and the interest to be paid in the future, and whether the bonds were good and valid. After such information was received, then the plaintiffs acted and accepted the bonds; and upon this question such action overcomes the evidence on the part of the plaintiffs that the plaintiffs were induced to make the contract because of the representations made by the defendant as testified to by the plaintiffs. The weight of the evidence, which is uncontradicted, shows that the acts of the plaintiffs were done after investigation.

In 20 Cyc., at p. 49, the author announces the rule and many authorities are cited to support the proposition that the rule of *caveat emptor* applies under ordinary circumstances— that the purchaser is required to use reasonable prudence to avoid deception, and says: "Thus where the subject matter of the representation is a fact not peculiarly within the vendor's knowledge, but is one to which the purchaser has equal and available means and opportunity for information, and there are no confidential relations existing between the two, and no fraud or artifice is used to prevent inquiry or investigation, it is a general rule that the purchaser must make use of his means of knowledge and that, failing to do so, he cannot recover on the ground that he was misled by the vendor."

Under the proof in this case, we think the evidence in support of the plaintiffs' claim as to the statements and the in-

ducement falls clearly within the rule stated by the authority in 20 Cyc., at p. 51: "In accordance with the rule of *caveat emptor,* if the purchaser has equal means of knowledge with the vendor and deals with him 'at arm's length,' the latter's representations as to the value of the property are usually deemed mere expressions of opinion and are not actionable, although false and fraudulent."

The general rule that this court will not reverse a judgment where there is a conflict in the evidence does not apply where the evidence is conflicting upon a matter or question which under all the proof is shown not to be the controlling question which governs the right of recovery. In this case there is a conflict upon the question whether the interest due before the contract was made was paid, and whether the interest due after the contract was made would be paid. There is no conflict whatever in the evidence when taken as a whole that the plaintiffs did not rely upon such representations as the inducement which lead them to enter into the contract, and that the plaintiffs relied upon their own investigation of the conditions and validity of the bonds and did not rely upon such representations with relation to the interest. There was no silence or concealment shown by the defendant, and when all the evidence is considered the essential elements of actionable fraud have not been shown, as the purchasers had equal and available means and opportunity for information and obtained all the information they desired, and if the means of information are alike accessible to plaintiffs as well as defendant, so that with ordinary prudence or diligence the parties might rely upon their own judgment, they must be presumed to have done so. (Smith on the Law of Frauds, chap. 2, sec. 2.) This information was given at the suggestion of the defendant, showing clearly no intention on the part of the defendant to deceive or defraud the plaintiffs in any way whatever.

For these reasons the judgment in this case is *reversed* and a new trial is ordered. Costs awarded to appellant.

Sullivan, J., concurs.