(October 15, 1914.)

McCONNON & CO., a Corporation, Appellant, v. G. R. HODGE et al., Respondents.

[143 Pac. 522.]

VERDICT—INSUFFICIENCY OF EVIDENCE.

1.   The evidence *held* not sufficient to sustain the verdict.

APPEAL from the District Court of the Second Judicial District for Latah County.   Hon. Edgar C. Steele, Judge.

Action to recover for goods, wares and merchandise. Judgment for defendants.   *Reversed.*

Wm. E. Lee, for Appellant, cites no authorities.

William M. Morgan, for Respondents.

It is the universal rule that a contract may be discharged by agreement between the parties.   (9 Cyc. 593.)

SULLIVAN, C. J.—This is an action brought to recover the value of certain goods alleged to have been sold to the respondent Hodge, Hughes and Clark, being sureties for the payment of the price of said goods.

The cause was tried by the court with a jury and a verdict rendered in favor of the defendant Hodge for the sum of $94.72 and costs, and in favor of Hughes and Clark for their costs incurred in the trial of the case.   The appeal is from the judgment and is based on the insufficiency of the evidence to sustain the verdict.

It appears from the record that the appellant corporation is engaged in the manufacture of spices, flavoring extracts, etc.; that the sale of such products is made to individuals at wholesale prices, and the individuals sell and dispose of the articles in territories assigned to them.

On or about October 12, 1911, the respondent Hodge, desiring to purchase certain goods from the appellant, entered

into a written contract with the appellant, the respondents Clark and Hughes signing said contract as guarantors, to the effect that Hodge would pay for the goods purchased. After said contract was signed and delivered, the appellant shipped certain goods to respondent Hodge on his order and he made a number of payments on said goods prior to the 29th of April, 1912, on which date the appellant was notified by Hodge's wife that Hodge had left the country and was not attending to business.

On May 15, 1912, one Norrup, an employee of appellant, visited Moscow for the purpose of trying to adjust or put upon a business basis the business of said Hodge. The record shows that he tried to adjust matters and in doing so an offer was made to sell the business to one Rush. The plan was to have Hodge turn over the remainder of the goods he held and also the accounts still due for goods, to Rush, who was then to enter into a contract with the appellant, and guarantor Clark was to sign the contract as guarantor for Rush. Norrup, Hodge and Rush invoiced the goods and accounts and the goods were turned over to Norrup for Rush, but when the matter was presented again to Clark, he refused to sign as guarantor for Rush. Thereupon the goods were turned back to Hodge, who continued to make certain sales from the goods; but Hodge was not conducting the business satisfactorily to appellant, and appellant demanded payment of the balance due from Hodge and his guarantors. Payment was refused and this action was brought in April, 1913.

The respondents pleaded a counterclaim, alleging that Hodge and Norrup effected a settlement in which Norrup agreed to pay Hodge $105 for his interest in said goods. Upon the issues thus made the case was tried before the court with a jury and a general verdict was rendered in favor of the respondents, including a judgment in favor of Hodge in the sum of $94.72. The respondents' contention was that there had been a settlement between Hodge and Norrup, whereby the guarantors had been released and the appellant had agreed to pay plaintiff $105.

It appears from the record that Rush had been recommended by Hodge as an agent or salesman for the appellant, and he had discussed with Clark and Hodge the matter of taking over Hodge's business and the balance of the goods remaining in his hands. It also appears that the respondent Clark and the appellant were not satisfied with the action of Hodge, and Clark was anxious to get the goods into the hands of some person who would attend to the business. Certain negotiations were carried on between Rush, Norrup, Hodge and Clark which the respondents insist constituted a settlement between appellant and Hodge.

On the trial Hodge testified on his direct examination that he sold his interest in said goods for $60 to the appellant, through Norrup, its agent; that thereupon they proceeded to invoice the goods, and Hodge testified that when he told his wife what he was getting, "she put up a kick" and said he was not getting enough, and thereupon Norrup agreed to pay the freight on the goods "on top of the $60," and that the freight agreed upon was $35.00. He also testified that Norrup said to him that if a new contract were accepted by the company, Rush would be given credit for the amount of goods Hodge had on hand. He also testified that he had never demanded the payment of the $105, or of any other sum, which he claimed was the contract price of the sale through Norrup. The testimony of respondent Hodge was quite contradictory.

Rush testified that it was his understanding that he was to pay Hodge the freight provided that he (Rush) took the goods. A letter written by Hodge to the appellant the day after the goods had been returned to him, to wit, May 16, 1912, clearly shows the understanding that he had of the transaction and acts that took place on the previous day. He states, among other things, in said letter, as follows:

"I received yours of the 11th yesterday and will say that Mr. A. J. Norrup has just been here, he said you sent him here to try to close a contract with Mr. Joseph Rush not knowing I was here ready to go to work . . . . and I agreed to turn the whole thing over to Mr. Rush providing Mr.

Clark would sign with him instead of me to this Mr. Clark agreed but backed down as soon as they got up there with the goods so they just turned around and brought the goods back to me and I have concluded to get on the road just as soon as possible and if Mr. Clark wont stand for me to order more goods I will try to get different guarantors altogether. . . . . Mr. Clark seems to talk one way to me and to Mr. Norrup another. I don't know how he has written you. I went to see my guarantors just as soon as I got home and they told me it was all right, to go right ahead they were willing to stand by me and I made my arrangements to this effect until Mr. Norrup came but as he failed to make any different arrangements I shall go ahead and will be on the road in a few days.''

This letter written the day after Norrup had tried to adjust the matter fully corroborates the testimony of Norrup in regard to said transaction. And that is not all; on June 3, 1912, Hodge wrote another letter to appellant in which he said nothing about the settlement that he swore to on the trial and he did not make any demand for the $95 or $105 which he testified Norrup had promised to pay him. In a letter to appellant dated July 16, 1912, Hodge offered to turn over said goods to any person simply upon the payment of the freight that he had paid on them. Why would he write such a letter as this if he had made a full settlement with Norrup for the appellant, whereby the appellant had agreed to pay him $60 and the freight for his interest in the goods and had taken possession of the goods under such a contract? He certainly would not have done so if he had sold his interest in the goods to the appellant for $60.

On July 25, 1912, Hodge wrote a letter to the appellant in which he stated that he had been trying to dispose of said goods to Rush. Is it not surprising that he would be trying to dispose of the goods to Rush when, if his testimony be true, he had already disposed of them to appellant? On October 9th he wrote another letter to appellant in which he said: ''I think if I can turn my goods to some one,'' etc. On that day he made a payment of five dollars on the account.

Why would he send five dollars on account to appellant if appellant were owing him nearly a hundred dollars? He claims that the settlement was made on the 15th of May, 1912, and as late as October 9, 1912, he remits five dollars on account to the appellant. On October 16th he wrote another letter to appellant in which he stated: "I received one remittance of $1.50 and hope to collect quite a little before the 20th. If you can send a man to get the goods, all right; if not I will ship them back. I assure you I am doing all I can do to make a settlement and will do so at the earliest possible date." His letters and acts corroborate the testimony of Norrup and show that the testimony given by Hodge in regard to said alleged settlement was not true. The evidence shows that he had received no goods from appellant in the meantime. So far as the record shows, Hodge had never intimated to the appellant corporation that he had made a settlement with Norrup for the goods that he had on May 15, 1912, until he filed his answer in this action. It is clear from the record that Rush had discussed with Hodge and Clark the proposition of buying Hodge out, and Rush was willing to do so if Clark would sign Rush's contract as guarantor. Clearly, Norrup's only interest in the matter was to get the matter adjusted and get Rush to take the territory that Hodge had, and when Clark refused to become guarantor for Rush, the attempt at a settlement fell through and the goods were returned to Hodge.

The evidence is not sufficient to sustain the verdict. The judgment must be reversed and a new trial granted. Costs awarded to appellant.

Truitt, J., concurs.