(May 31, 1924.)

E. H. CLARKE, Doing Business Under the Firm Name and Style of CLARKE REALTY COMPANY, Appellant, v. BLACKFOOT WATER WORKS, LTD., a Corporation, Respondent.

[228 Pac. 326.]

BROKERS—COMPENSATION—CONTRACT FOR SALE OF REAL PROPERTY—CONSTRUCTION — "BEEN IN CORRESPONDENCE" — "OPENED NEGOTIATIONS"—ACTION FOR COMMISSION—EVIDENCE—ADMISSIBILITY—APPEAL AND ERROR — REVIEW—VERDICT — LACK OF EVIDENCE IN SUPPORT OF—EFFECT.

1. Where it is provided in a contract for the sale of property by a real estate broker that the owner will pay an agreed commission in the event of a sale of the property, within twelve months after the expiration of the contract, to "any individual, firm or corporation with whom or with which [the broker] shall have been in correspondence, or shall have opened negotiations, during the twelve (12) months . . . . ," it was not necessary that the property be sold as the result of the efforts of the broker, it being necessary only for the broker to show that the property was finally sold to one with whom or with which he had been in correspondence, or had opened negotiations, within the time provided.

2. Where it is provided in a contract for the sale of property by a real estate broker that the owner will pay an agreed commission in the event of a sale of the property, within twelve months after the expiration of the contract, to "any individual, firm or corporation with whom or with which [the broker] shall have been in correspondence, or shall have opened negotiations, during the twelve (12) months . . . ," by the expression "with whom or with which [the broker] shall have been in correspondence, or shall have opened negotiations," the parties meant any individual, firm or corporation with whom or with which the broker should take up the matter of the sale by means of correspondence, or any individual, firm or corporation to whom or to which the broker should make an effort, by the methods ordinarily employed by real estate brokers, to sell the property.

3. The object and purpose of a contract may well be taken into consideration in arriving at a correct understanding of what the parties had in mind in using words the meaning of which is in controversy.

4. Where there is no substantial evidence to support the verdict the judgment will be reversed.

5. Statements of the officers of a corporation, in negotiations for the sale of the property of the corporation, that, in arriving at the price to be paid, the commission of the real estate broker should be taken into consideration, are admissible in an action by the broker against the corporation for a commission.

APPEAL from the District Court of the Sixth Judicial District for Bingham County. Hon. O. R. Baum, Judge.

Action by real estate broker for commission. Judgment for defendant. *Reversed.*

Budge & Merrill, for Appellant.

Where the evidence is overwhelmingly in favor of the plaintiff's cause of action and there is no substantial conflict in it, judgment for the defendant will be set aside. (*Idaho Mercantile Co. v. Kalanquin,* 8 Ida. 101, 66 Pac. 933; *Grisinger v. Hubbard,* 21 Ida. 469, Ann. Cas. 1913E, 87, 122 Pac. 853; *Spencer v. John,* 33 Ida. 717, 197 Pac. 827; *Quayle v. Ream,* 15 Ida. 666, 99 Pac. 707; *Breshears v. Callender,* 23 Ida. 348, 131 Pac. 15; *Goldstone v. Rustemeyer,* 21 Ida. 703, 123 Pac. 635.)

In a civil action the admissions by a party of any fact material to the issue are always competent evidence against him wherever, whenever or to whomsoever made. (*Reed v. McCord,* 160 N. Y. 330, 54 N. E. 737; 2 Chamberlayne's Modern Law of Evidence, notes, 1290, 1291.)

Declarations of officers of a corporation in the line of their duty are admissible in an action against the corporation. (*Mantle v. Jack Waite Mining Co.,* 24 Ida. 613, 135 Pac. 854, 136 Pac. 1130; *Martin v. Manchester Inv. Co.,* 181 Mo. App. 364, 168 S. W. 904; *Vincent v. Soper Lumber Co.,* 113 Ill. App. 463; *Pits v. D. M. Steel Merc. Co.,* 75 Mo. App. 221; 16 Cyc. 1019.)

John W. Jones and Guy Stevens, for Respondent.

It was manifestly the intention of the parties to the contract to provide some compensation for the services of the

plaintiff in the event the property was sold by the owner thereof during the year following the first year of the contract to one with whom plaintiff had been in correspondence or with whom he had opened negotiations during the first twelve months of the contract. The contract should be construed to give effect to this evident intention of the parties. So construed, it cannot be urged that the writing of a circular letter to the mayor and the individual members of the council informing them of the sale contract and the price specified therein, which apparently received no attention and to which there was no reply, constituted the city of Blackfoot a corporation with which the plaintiff had been in correspondence.

The Universal Dictionary defines the word "correspondence" as follows: (1) Intercourse by means of letters sent and received. (2) The letters sent and received by correspondents.

Webster's New International Dictionary, 1912, defines the word "correspond" as follows: (3) to have intercourse, communion, or communication; esp., to hold intercourse or to communicate by sending and receiving letters.

The word "negotiation" is generally defined as treating or negotiating with another respecting the purchase and sale of anything, bargaining, treaty. Universal Dictionary.

"It is not necessary that the admission should be of the principal fact, or all of a series of facts in dispute; but it must relate to the subject matter of the issue in such a way as to be relevant, or at least fairly justify or permit an inference to be drawn concerning the matter in issue." (1 Elliott on Evidence, sec. 222, p. 317.)

"The admission, like all other evidence, must be material to the issue." (1 Ency. of Evidence, p. 603.)

WM. E. LEE, J.—Prior to and on February 5, 1919, and for something over a year thereafter, the respondent, Blackfoot Water Works, Ltd., a corporation, was the owner of a plant and system which furnished water to the city of Blackfoot. On the above-mentioned date, respondent entered into a written contract with appellant, E. H. Clarke,

of Pocatello, doing business under the name of Clarke Realty Company, by which respondent listed with appellant, and granted him the exclusive right to sell, the waterworks plant and system for a period of one year. The sale price was fixed at $125,000, and respondent promised to pay appellant a commission of five *per centum* of the sale price in the event of a sale. No sale of the property was. effected within a period of one year from the date of the execution of the contract, but the property was sold to the city of Blackfoot on or about November 1, 1920, for the sum of $82,000, which was within a period of two years from the date of the contract. The contract contained the following provision:

"It is further agreed by the parties hereto that in the event that no sale is entered into within the twelve (12) months allowed by this option and agreement, but a sale is nevertheless made within the twelve (12) months thereafter and entered into between the Blackfoot Water Works, Ltd., and any individual, firm or corporation with whom or with which the said Clarke Realty Company shall have been in correspondence, or shall have opened negotiations, during the twelve (12) months that this option is fully effective, then in that case the Blackfoot Water Works, Ltd., by its officers, agrees to pay to the Clarke Realty Company a commission of two and one-half per cent (2½%) on the sale price."

Upon the sale of the property to the city of Blackfoot, appellant demanded of respondent the payment to him of $2,050, being two and one-half *per centum* of the sum for which the property was sold, as a commission which he alleged to be due him under the contract.

In addition to other allegations, appellant alleged that, in compliance with the terms of the contract and by reason thereof, he spent a great amount of time and money in an endeavor to effect a sale of the property, and that, within one year from the date of the contract, he opened negotiations and had correspondence with the city of Blackfoot in an effort to sell the property to that municipality. In

the answer, respondent admitted the execution of the contract and admitted the sale of the property to the city of Blackfoot for $82,000, but denied that appellant opened negotiations or had correspondence with the said city, and further denied that there was anything due or owing to appellant on account of the sale of the property to the city of Blackfoot. The action was tried to the court and a jury and resulted in a verdict and judgment for respondent.

Appellant makes three assignments of error, one of which raises the question of the insufficiency of the evidence to sustain the verdict, the others relating to alleged errors of the court in sustaining objections to certain testimony offered by appellant.

The testimony shows that after the execution of the contract, appellant addressed a communication to the mayor and members of the council of the city of Blackfoot, advising them that the waterworks property was listed with him for sale, and that it could be purchased for $125,000. None of the officers of the city answered the communication, and no other letter was written to them concerning the matter. At that time the newly elected officers were about to assume office, and the outgoing officials did not desire to consider the question because of the early change of administration in the municipal government. Thereafter, F. C. McGowan, an employee of appellant, went to Blackfoot and arranged for a meeting of appellant with the new mayor and council. In pursuance of this arrangement, appellant and McGowan went to Blackfoot and appeared before the mayor and council. As to what happened at that meeting, there is no serious conflict in the evidence. The minutes of the council furnish the following record:

"Mr. Clarke of Pocatello appeared before the Council in regard to the purchase of the waterworks and urged the Council to agree to arbitration of the purchase price. No action was taken at this time."

Clarke testified that the council informed McGowan and himself that it would not consider, under any circumstances, the price asked, and that they then urged the council to

agree to arbitrate the matter, but that the council took no action toward the suggested arbitration. While it appears that Clarke appeared but once before the mayor and council as a body, he testified that he made twenty or thirty trips to Blackfoot and talked with members of the council and different citizens in the interest of the sale.

There is no substantial conflict in the evidence on any question material to the determination of the issue. It is not disputed that appellant and McGowan made many trips to Blackfoot and urged the city officials to purchase the waterworks for the city. It is claimed that they refused to entertain the proposal to purchase the system. This contention is not sustained. The city refused to consider the purchase of the waterworks for the sum of $125,000, but the evidence shows that the city officials did not refuse to treat with appellant with respect to the purchase of the waterworks. The city entertained the idea of the purchase and suggested a price of $50,000, but the parties were not able to agree on a price, and no sale was then made. It must be understood that appellant is not seeking a recovery on the theory that he was the procuring cause of the sale— that he found a purchaser who was ready, able and willing to buy. The recovery is sought on the ground that the waterworks property was sold during the second year of the contract to the city of Blackfoot, with which appellant had been in correspondence or had opened negotiations. There is no claim that respondent, through its officers, had, before the contract was made with appellant, opened negotiations or been in correspondence with the city in an effort to sell the waterworks to the city; or that they were sold through previous negotiations opened by other real estate brokers. The only issue of fact in the case, and consequently the only question for the determination of the jury, was whether the Clarke Realty Company had "been in correspondence" or had "opened negotiations" with the city of Blackfoot with respect to the purchase of the waterworks. This one issue was submitted to the jury under the following instruction, to which no objection is made:

"You are instructed, gentlemen of the jury, that if you believe by a preponderance of all the evidence in this case that a sale of the waterworks plant was made to the city of Blackfoot, Idaho, and that the said city of Blackfoot, Idaho, was a corporation with which the said plaintiff had been in correspondence, or had opened negotiations, during the period of twelve months after the execution of the contract, then you are instructed that your verdict should be for the plaintiff, not to exceed, however, the amount prayed for in the complaint; but, on the other hand, if you do not so find, your verdict should be for the defendant."

The words "correspondence" and "negotiation" are defined as follows:

Correspondence: "The act of communicating by means of letters; also, the letters themselves." Negotiation: "The act of negotiating in general; bargain and arrangement between parties as to some agreement, treaty, sale, etc." (Funk & Wagnalls' New Standard Dictionary, 1914.)

Correspondence: "Intercourse between persons by means of letters." Negotiation: "Act or process of negotiating; a treating with another with a view to coming to terms, as for a sale or purchase or in international affairs." (Webster's New International Dictionary, G. & C. Merriam Co., 1916.)

Correspondence: "Intercourse or communication by letters." Negotiation: "The action or business of negotiating or making terms with others." (Murray's New English Dictionary, Oxford Edition, 1908.)

Correspondence: "Interchange of written communications. The letters written by a person and the answers written by the one to whom they are addressed." Negotiation: "The deliberation, discussion or conference upon the terms of a proposed agreement; the act of settling or arranging the terms and conditions of a bargain, sale or other business transaction." (Black's Law Dictionary (2d edition), 1910.)

Correspondence: "The letters written by one person to another, and the answers thereto." Negotiation: "The deliberation which takes place between the parties touching

a proposed agreement.'' (Shumaker and Longsdorf's Cyclopedic Law Dictionary, 1912.)

The object and purpose of the contract may well be taken into consideration in arriving at a correct understanding of what the parties had in mind when they used the words, ''shall have been in correspondence, or shall have opened negotiations.'' Appellant was a real estate broker. The respondent entered into the contract with him because it desired his assistance in disposing of the property. It naturally wanted him, under the provisions of the contract, to write letters to prospective buyers, to take up personally with prospective buyers the matter of the sale of the property, and to use his best efforts to effect the desired sale. Respondent no doubt contemplated that appellant would endeavor to sell the property, and, in so doing, would talk personally with members of firms and officers of corporations, formally as well as informally. It must have been the understanding of the parties that such things constituted corresponding and negotiating, for they are among the things respondent expected appellant to do. By the expression, ''with whom or with which said Clarke Realty Company shall have been in correspondence, or shall have opened negotiations,'' the parties must have meant any person, firm or corporation with whom or with which appellant should take up the matter of the sale by means of correspondence, or any person, firm or corporation to whom or to which appellant should make an effort, by the methods ordinarily employed by real estate brokers, to sell the waterworks. Such a meaning of these words appears not only to be in harmony with the quoted definitions, but it is the meaning that is justified by the nature of the work to be performed. Under this provision of the contract, it was not necessary that the property be sold as the result of the efforts of appellant. To recover, he was only required to prove that he *opened negotiations* or *had been in correspondence* with the city, to which the property was sold within the time provided in the agreement.

While there may be some doubt whether the writing of one letter constitutes "correspondence," we are of the opinion that the evidence abundantly establishes the fact that appellant did open and carry on negotiations with the city of Blackfoot. There is no escape from this conclusion. There is no substantial conflict in the evidence on this question. All the witnesses who testified on this issue agreed that appellant discussed the matter of the sale to the city with the mayor and council in session, and that later on appellant and his assistant on several occasions talked with the mayor and different members of the council about the proposed purchase and tried to get the parties to arbitrate their differences and agree upon a price. Appellant failed to bring about a sale of the property during the first year of the contract, but we cannot escape the conclusion that he did, during that period, open and carry on negotiations with the city. The fact that, "No action was taken at this time," as stated in the minutes of the council, upon the offer to sell the property for $125,000, or upon the proposition to arbitrate, does not imply that no negotiations were opened. Such a minute entry merely establishes the fact that the city took no formal action, that the city "at this time" neither accepted nor rejected the proposition submitted by appellant. The record shows without question that appellant appeared before the council and "opened negotiations" with the city concerning the sale.

Since the evidence undoubtedly establishes the fact that appellant did open negotiations with the city of Blackfoot within one year after the contract was entered into, that there is no conflict in the evidence, and that there is no substantial evidence to support the verdict of the jury, it becomes the duty of this court to grant a reversal of the judgment appealed from. (*Spencer v. John,* 33 Ida. 717, 197 Pac. 827; *McConnon & Co. v. Hodge,* 26 Ida. 376, 143 Pac. 522; *Breshears v. Callender,* 23 Ida. 348, 131 Pac. 15; *Goldstone v. Rustemeyer,* 21 Ida. 703, 123 Pac. 635; *Grisinger v. Hubbard,* 21 Ida. 469, Ann. Cas. 1913E, 87, 122 Pac.

853; *Quayle v. Ream,* 15 Ida. 666, 99 Pac. 707; *Idaho Mercantile Co. v. Kalanquin,* 8 Ida. 101, 66 Pac. 933.)

Appellant was not permitted to prove statements made by two officers of respondent in the negotiations leading up to the sale that, in the event of the sale, appellant would be entitled to a commission, and that the amount thereof should be taken into consideration in arriving at the purchase price. The fact to be determined was whether appellant had been in correspondence with or had opened negotiations with the city. It will not be contended that an admission of the fact in issue should not have been received in evidence. What reason, therefore, is there against receiving in evidence an admission of a conclusion or an inference to be drawn from the fact sought to be proved? This proffered testimony related to the fact to be proved and was material. An admission that, upon the consummation of the sale, appellant would be entitled to a commission would imply that appellant had "been in correspondence" or had "opened negotiations" with the city, since this was the only basis upon which a liability under the contract could arise.

Professor Wigmore, in his treatise on Evidence, 2d edition, vol. 2, p. 511, sec. 1053, says:

"A primary use and effect of an admission is to discredit a party's claim by exhibiting his inconsistent other utterances."

The admissions sought to be introduced would tend to show that the attitude of respondent in the trial was inconsistent with that formerly taken with respect to the subject matter of the action. Such an admission, when once in evidence, however, is not conclusive; it is subject to explanation, and it is not sufficient within itself to establish the ultimate fact. It is merely a circumstance for the consideration of the jury, as tending to prove the fact in issue. No valid reason has been suggested justifying its exclusion.

"  . . . . In a civil action the admissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever, or to whomsoever

made. . . . . The theory upon which this class of evidence is held to be competent is that it is highly improbable that a party will admit or state anything against himself or against his own interest unless it is true. . . . . '' (*Reed v. McCord*, 160 N. Y. 330, 54 N. E. 737.)

Judgment reversed. Costs to appellant.

McCarthy, C. J., and Terrell, District Judge, concur.

Petition for rehearing denied.