18162.    CODY & EDGAR *v.* AUTOMOBILE FINANCING INC.

BELL, J. 1. Where the parties to a sale of an automobile enter into a written contract with respect thereto in which the property is described as one "Nash Touring car, 5 passenger, Model 691, serial No. 239131, motor No. 126524," and in which it is stipulated that "the vendor does not warrant said property, and make no representations concerning same except that the title to same is in the vendor and free from encumbrance," such stipulation amounts to a refusal by the vendor to warrant the property except as to title; and where it is not shown that the seller practiced any fraud on the purchaser touching the execution and contents of the contract, nor that there was any accident or mistake in regard to such matters, the purchaser can not contradict the terms of such written agreement by proof of parol express warranties or representations made prior to or at the time of the sale, nor plead a breach of the implied warranties of law, in defense to a proceeding by the seller to collect the purchase money. *Angier*

---

Evidence, 22 C. J. p. 1119, n. 83, 84; p. 1274, n. 85; p. 1275, n. 89.
Motor Vehicles, 42 C. J. p. 783, n. 11, 17, 18.
Sales, 35 Cyc. p. 492, n. 64.

v. *Brewster*, 69 *Ga.* 362; *Barron G. Collier Inc.* v. *Bailey*, 31 *Ga. App.* 197 (2) (120 S. E. 427); *Hoffman* v. *Franklin Motor Co.*, 32 *Ga. App.* 229 (4) (122 S. E. 896); *Rounsaville* v. *Leonard Mfg. Co.*, 127 *Ga.* 735 (2) (56 S. E. 1030); *Worsham* v. *Penn*, 32 *Ga. App.* 189 (2) (122 S. E. 817).

2. While the rule that parol evidence is inadmissible to add to, take from, or vary a written contract has no application to new and distinct agreements subsequent to the original written contract (*Elyea-Austell Co.* v. *Jackson Garage*, 13 *Ga. App.* 182 (79 S. E. 38), a subsequent agreement in the nature of a novation, modifying the terms of a contract of sale excluding all warranties, must, like any other contract, be supported by a valuable consideration. *Widincamp* v. *Patterson*, 33 *Ga. App.* 483 (4) (127 S. E. 158); *Phelps* v. *Belle Isle*, 29 *Ga. App.* 571 (3) (116 S. E. 217).

3. The affidavit of illegality in this case fails to show any consideration for the alleged subsequent warranties and agreements the breach of which was relied on as the basis for a failure of consideration or abatement of the purchase-price of the automobile. *Roscorla* v. *Thomas*, 3 Q. B. 234, Clark on Contracts (2d ed.), 138. In this respect the case differs materially from *Dortch* v. *Bishop*, 27 *Ga. App.* 720 (109 S. E. 674), and *Widincamp* v. *Patterson*, supra. It is also to be distinguished on its facts from the case of *Snellgrove* v. *Dingelhoef*, 25 *Ga. App.* 334 (103 S. E. 418).

4. The court did not err in striking the affidavit of illegality.

        *Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*

        DECIDED NOVEMBER 21, 1927.

Affidavit of illegality of execution; from Barrow superior court —Judge Stark. April 25, 1927.

        STATEMENT OF FACTS BY BELL, J.

On April 25, 1923, Automobile Financing Incorporated delivered to Cody & Edgar, a partnership, under a written conditional sale an automobile described in the agreement as one "Nash Touring car, 5 passenger, Model 691, serial No. 239131, motor No. 126524," for which the vendees paid $450 in cash and were to pay a remainder of $1060 in monthly installments as set forth in the conditional-sale contract. This agreement contained the following stipulation: "The vendor does not warrant said property, and make no representations concerning same except that the title to same is in the vendor and free from encumbrance," and was signed by the partnership as purchasers. The instrument purported to have been executed by the purchasers in the presence of one S. C. Green as a witness.

Cody & Edgar, the vendees, paid the several installments according to the terms of the agreement, with the exception of the

last three installments, aggregating $475. This sum they refused to pay, and the vendor foreclosed the conditional-sale contract. Upon the levy of the execution the defendants filed an affidavit of illegality, which, with amendments thereto, was as follows:

"1. Deponent says that said defendant is not indebted to plaintiff in any amount and that the conditional sales contract sought to be foreclosed as a mortgage is utterly void and without consideration, for that the consideration of said contract, as appears from the terms thereof, was one certain Nash touring-car, described therein, purchased by the defendant from the plaintiff. The notes and contract signed by defendant was procured by the rankest kind of fraud perpetrated upon the defendant by the plaintiff, and were secured in the following manner: Defendant firm was on the market for the purchase of an automobile, and was approached by plaintiff, and defendant was much impressed with the performance of said car and finally decided to purchase a new Nash six-cylinder car. The defendant firm finally decided to purchase said new Nash car and placed an order for same, and plaintiff agreed to deliver same at three o'clock on the afternoon of the following day. Sometime in the afternoon of the day said notes and contract were executed the agent of plaintiff which defendant was dealing with, one Jones, came to the office of defendant firm and stated that he was delivering a new car as ordered to defendant, that the salesman was on the way with the car, and that he, the said Jones, had come to close up the trade and get said notes and contract from defendant firm. Defendant had previously had dealings with plaintiff. and was acquainted with Jones, and, having no reason to believe that a monstrous fraud was about to be perpetrated upon them, they complied with the request of said Jones and executed said notes and contract before said car was delivered or defendant had had any opportunity to inspect same. Defendants waited and waited for the delivery of the car, but the same was not delivered until after the shades of night had fallen and it was too dark to make a detailed examination of said car.

"2. Defendants show that this was a part of an elaborate scheme on the part of the plaintiff to work off an old used car upon the defendants as being a new car, and defendants show

that while they ordered and contracted for a new automobile, in truth and in fact the car delivered to them after dark by plaintiff was an old car which plaintiff had had and had driven and used as a demonstrating car for some time, that the paint on said car had already begun to dull, though plaintiff, as a part of the fraudulent scheme to cheat and swindle defendants, had washed said car and shined the same with some preparation to make the car appear new, but, even with all the shrewdness of plaintiff, said car appeared in the light of day to have been used.

"3.  Immediately upon discovering the fraud which had been perpetrated upon them the defendants returned with said car to plaintiff and demanded that they comply with their contract and furnish them with the new car which they had purchased and paid for. Plaintiff assured defendant that said car was brand new, and that the same had been unloaded from the railroad-car only a few days previously, and told defendants to satisfy their minds as to said car, that the same was brand new and in good condition and as they represented before delivery, and that for defendants to take said car and keep the same, and that if said car was not right they, the plaintiffs, would make such adjustments as would be just and equitable, and that they, the plaintiffs, would be responsible for the performance of the car.

"4.  Defendants show that all of the representations and warranties made by the plaintiff in connection with said car were false and fraudulent, and were made for the purpose of deceiving and defrauding defendants, and did deceive and defraud defendants. Defendants aver that said car was old and defective and not reasonably suited for the purpose intended, to wit: of transporting defendants upon the streets and highways, that plaintiffs had carefully doctored said car to make the same appear to be new, when in truth and in fact plaintiff had operated it to the most wearing usage in order to impress prospective purchasers. But defendants show that as a part of the fraudulent scheme of plaintiff to palm off said car on defendants, and the first time defendants saw said car was when the same was delivered under the conditions hereinbefore enumerated.

"5.  Defendants show that after they had gone to plaintiff in regard to said car, and plaintiff had allayed defendants' suspicions by guaranteeing the performance and newness of said car, that

the following latent defects appeared in said car, all appearing within three weeks of the time plaintiff had told defendants that they would be responsible for the performance of said car, the paint job on said car was defective, in that the paint immediately became dull and gave an old and worn appearance to said car, the speedometer on said car was defective in that as a part of the fraudulent scheme of plaintiff to defraud defendants the seal on the same had been broken and the same run back to hide from defendants the fact that said car had been operated, the battery in said car was old and worn and went dead, and refused and failed to start the car or to give any light; that the transmission of said car was worn out and utterly useless, and had to be constantly repaired; the clutch of said car was defective and slipped constantly, and defendants show that said clutch had to be tightened almost every week, and defendants show that all of said car, on account of the strain imposed upon it while operated by plaintiff as a demonstrator was not reasonably suited for the purposes intended and that said notes and contract were obtained through false and fraudulent representations that a new car was to be delivered to defendants.

"6.    Defendants further show that the strain on said car had forced the rear axles on same out of line, and it was necessary in the repair of same to weld on an additional piece to the end of said axle.

"7.    Defendants further show that as a part of the fraudulent scheme of plaintiff to cheat and defraud defendants that the name of S. C. Green appears as a witness to said conditional sales contract, when in truth and in fact no such person was present when the same was executed, nor did he see this defendant sign said contract, and any such person is not even known by defendants.

"8.    Defendants show that the consideration of said note has wholly and totally failed, that defendants have paid to plaintiffs more than $200 more than said car was worth when originally delivered, that by reason of the false representations and warranties made by the plaintiff which induced defendants to keep said car after the defects in same had been discovered, the defendants have been damaged in the sum of $500, in that said car had been in the shop for repairs when the same was needed by defendants in their business, which was that of real-estate dealers, for as much

as 10 days, that defendants have expended large sums on said car by way of repairs, for which said sums the defendants pray judgment.

"(a) Defendants say that immediately upon discovering the fraud which had been perpetrated upon them by the action of the plaintiff in delivering to them a second-hand car as being new, that they returned said car to plaintiffs and demanded a rescission of the contract, and offered to restore to plaintiff the said car and rescind the contract of purchase and sale. Plaintiffs refused to accept said car and to rescind said contract, but insisted that the car was all that had been claimed by them and was a new car.

"(b) Defendants further say that the representations of plaintiffs as to said car were false, and that said car had in fact been used for some time as a demonstrator, and that the representations of said plaintiff as to said car being new were made for the purpose of deceiving and defrauding these defendants.

"(c) Defendants show that upon offering to rescind the contract and restore the car to plaintiffs that plaintiffs refused to accept said car, and told these defendants that if said car did not operate as new that they would adjust the matter satisfactorily with defendants, and would give them either an abatement of the purchase price or make good any defects in said car. And defendants show that the payments made by them upon said car were made in consideration of the promises and agreements of plaintiffs to adjust equitably the fraud which had been perpetrated upon these defendants. That defendants, knowing that said car was of some value, even if old and previously used as a demonstrator, paid to plaintiffs upon said car the payments credited upon the note, but each payment was made with the express understanding and agreement with plaintiff that plaintiff would equitably adjust the matter in controversy with defendants. Defendants were anxious to avoid any litigation with the plaintiffs, and, relying on these promises of plaintiffs to adjust the matter to their satisfaction, and to see that said car gave the service of a new one, paid the several notes which became due prior to the note foreclosed in this case. However, defendants show that said car did not give satisfaction, that it was defective in the details set out in the original illegality, and that upon the failure of

plaintiffs to comply with their promises to make the said car satisfactory these defendants ceased their payments on said notes, having already paid more than said car was worth.

"(d)   Defendants show that each and every one of the payments were made upon the distinct understanding and agreement with plaintiffs that they would see that said car performed as a new car and that they would be responsible for any defects in the car and would adjust all defects, and that all of said representations and promises of plaintiffs were made after the execution of the notes sued upon."

The court sustained an oral motion to strike the affidavit of illegality for insufficiency in law, and the defendants excepted.

*Richard B. Russell Jr.*, for plaintiffs in error.

*Key, McClelland & McClelland, R. H. Kimball*, contra.