### 18576. PECK *v.* HARRIS.

DECIDED AUGUST 10, 1928. REHEARING DENIED SEPTEMBER 26, 1928.

*W. G. Warnell,* for plaintiff in error.

*Adams, Adams & Douglas,* contra.

LUKE, J. The judgment of this court dismissing the writ of error in this case (*Peck* v. *Harris*, 37 *Ga. App.* 688, 141 S. E. 433) having been reversed on certiorari by the Supreme Court (166 *Ga.* 633, 144 S. E. 20), said judgment so rendered by this court is vacated. It now becomes necessary to decide the question presented by the record, to wit: "Did the trial judge err in striking the material portions of the defense, and in rendering a judgment for the plaintiff?"

Stephen H. Harris brought his action in trover against Fenn Peck, for "one Hupmobile touring-car, manufacturer's serial number R39164, motor number 89562, of the present value of $350." The petition alleged that said automobile was sold to Peck on October 20, 1925, under a conditional-sale contract retaining title in

the vendor until the full purchase-price thereof should be paid. Paragraph 5 of the petition is as follows: "The said automobile was purchased as a second-hand machine, and the said Fenn Peck examined, inspected, and tried out said automobile, and also had a mechanic inspect and try out said automobile before he signed the said conditional-sale contract." It was further alleged that the agreed price of said automobile was $535, that there was a balance due thereon of $150, and that the defendant had refused payment of said balance.

In his answer Peck admitted executing said sale contract, and assumed the burden of proof; admitted the alleged purchase-price of the machine, but denied that there was any balance due thereon; and admitted his refusal to deliver it to the plaintiff. Other paragraphs of the answer were: (4) "Answering paragraph 5 of the plaintiff's petition, the defendant admits that he knew he was purchasing a second-hand automobile, and that he was driven a short distance in same before signing said contract; but he denies the remaining allegations of said paragraph." (7) "For further plea and answer, the defendant alleges that on the date of the alleged purchase of said automobile he was, and still is, unlearned,.unskilled, and inexperienced as to the mechanism of automobiles and automobile models, and especially as to Hupmobiles; and then having explicit confidence in the business integrity and reliability of the plaintiff, he naturally relied then and there on the representations made to him by said plaintiff." (8) "Defendant says that said automobile was sold to him then and there, by the plaintiff, as a '1923 Model' Hupmobile, merchantable, in good condition, and reasonably suited to the purpose for which it was intended; and, relying upon these representations, defendant executed the contract declared upon." (9) "Defendant further shows that the representations referred to in paragraph eighth hereof were untrue, and a fraud on him, and that he was induced to execute the contract by reason thereof, as will be more fully hereinafter made to appear." (10) "That the consideration for said contract has partially failed, by reason of the facts hereinafter stated." (11) "In this paragraph defendant itemizes the money expended by him on said automobile, as follows: Oct. 22, 1925, $8.75 for temporary repairs he was forced to have made in order to get back to Savannah from Beaufort, S. C.; Oct. 26, 1925, $33.50 for permanent bearing and

repairs to motor; Nov. 10, 1925, $11.00 for new back curtain to replace old rotten one; April 1, 1926, $20.00 for new set of bolts and bushings and defendant's labor in installing same; April 13, 1926, $131.67 for new set of tires; April 26, 1926, $28.90 for new armature and overhauling generator; from Nov. 1, 1925, to May 15, 1926, $75.00 for front-wheel bearings, rear-wheel keys and keyways, new brake-linings, and tightening motor." (12) "Defendant alleges that the defects enumerated in the foregoing paragraphs were known, or should have been in the exercise of ordinary diligence, to the plaintiff at the time of said sale, and were unknown to this defendant because of his inexperience, as aforesaid." (13) "Defendant says that immediately after the discovery of the defective condition of said automobile, he reported same to the plaintiff, and asked then and there for some adjustment of the matter; and that plaintiff put him off, saying that if we could not agree upon an adjustment we would arbitrate same." (14) "Finally, on or about April 16, 1926, defendant discovered that instead of being a '1923 Model' car, as was represented and warranted by the plaintiff, that in fact it was an old worn-out '1920 Model,' not being worth at most, at the time of sale, the sum of $200.00; whereupon defendant promptly notified the plaintiff of this discovery, and again asked him to take the car back and give defendant an adjustment for the payments and expenses he had been forced to make for the repairs on said car, which request was declined by the plaintiff." (15) "Defendant alleges that the defects above mentioned and enumerated, and the resultant expenses for repairs therefor, were directly and proximately caused by the old age of said automobile and the worn-out condition of its mechanism; and that this defendant was free from fault, and in no way contributed to the causes of same." (16) "That the real age of said automobile and the worn-out and defective condition of its machinery were latent to any one, except an experienced automobile man or a skilled mechanic." (17) "The defendant alleges that a fair market value of said automobile, at the time he contracted for the purchase of it, was $200.00, and that he has actually paid the plaintiff the sum of $385.00, and that the total amount expended by him on said automobile is $308.82, thus making defendant have a total investment in same amounting to $693.82, which amount he now herein sets off and recoups against

said plaintiff, and prays this honorable court for a judgment against the plaintiff for the excess, to wit, the sum of $493.82."

The sale contract attached to the petition as a part thereof contains these provisions: "I have examined said chattel, and accept the same in its present condition. . . I, or we, expressly waive as against this agreement . . all claims for damages of whatever nature; also any and all provisions of law wherein and whereby it is required that any sum of money shall be paid to me, or us. . . This and the reserved-title agreement constitute the full and complete terms on which said chattel has been sold." The contract need not be set out in full. Suffice it to say that it provides that the vendee shall pay all taxes and insurance on said automobile; that in the event the dealer or his assigns are unable to carry such insurance, as they have a right to do if the vendee does not do so, they shall not be responsible for any loss or damage thereon from fire, or theft; that the parties to the contract appoint designated persons to adjust any loss arising out of or under any insurance policy or bond issued on or covering said property; that the injury or destruction of said property shall not release the vendee from paying for it and from giving renewal notes therefor as provided by the contract; and that if any part of the indebtedness shall remain due and unpaid, or if said "chattel" is removed from the county of the residence of the vendee, or if it is encumbered, or if same is disposed of in any way, or if it is used to carry passengers for hire, or is misused or abused, or if taxes and insurance premiums are not paid by the vendee when due, or if said automobile is used for the transportation of liquor in violation of any law, or if any insurance company should desire to withdraw its insurance on said property, the full price of said automobile shall become due and payable, and the vendor shall have the right to repossess and sell the same without any legal process, retaining all payments made by the vendee as liquidated damages.

Since "an express warranty excludes an implied warranty on the same or a closely related subject" (*Barber* v. *Singletary*, 13 *Ga. App.* 171, 78 S. E. 1100), no implied warranty is in this case. See paragraphs 8 and 9 of the answer. From the fullness and detail with which the agreement was set out, as well as from the express terms of the sale contract, it is clear that the entire agreement was intended to be integrated in the contract. See *Bullard* v. *Brewer*,

118 *Ga.* 918 (45 S. E. 711) ; *Reeves Tractor &c. Co.* v. *Barrow,* 30 *Ga. App.* 420 (118 S. E. 456) ; *McMillan* v. *Cochran,* 24 *Ga. App.* 579 (101 S. E. 717). "In case of a chattel, where the parties have reduced to writing what appears to be a complete and valid contract of sale, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the entire agreement, and parol evidence of prior or contemporaneous representations, statements, or agreements in regard to the subject-matter is inadmissible to add to, take from, or vary the written instrument." *Hoffman* v. *Franklin Motor Car Co.,* 32 *Ga. App.* 229 (3) (122 S. E. 896) ; *Bullard* v. *Brewer,* supra. Recognizing the foregoing rule, the defendant sought to plead fraud. Did he successfully do so? We think not. The defendant admitted "that he knew he was purchasing a second-hand automobile, and that he was driven a short distance in same before signing said contract." It does not appear that he did not have full opportunity to examine said automobile, or to have it examined by some one competent to ascertain its true condition, before the sale contract was signed or the car delivered. It may also be noted in this connection that it appears from paragraph 8 of the answer that the defendant himself was enough of a mechanic to install bushings and bolts in the car, and to ask pay for his services in so doing. There was no artifice, trick, or device employed by the plaintiff either to cause the defendant to sign the sale contract or to accept delivery of the automobile. Our conclusion is that the trial judge properly struck paragraphs 7 to 17, inclusive, on motion; and that, having done so, the judgment for the plaintiff was demanded. In addition to the authorities cited above, see *Nolan* v. *Calhoun,* 38 *Ga. App.* 227 (143 S. E. 606) ; *Cody* v. *Automobile Financing Inc.,* 37 *Ga. App.* 452 (140 S. E. 634) ; *Hadden* v. *Williams,* 37 *Ga. App.* 464 (140 S. E. 797).

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*