ROUNSAVILLE & BROTHER *v.* LEONARD MANUFACTUR-

ING COMPANY, and *vice versa.*

1. The trial judge, in passing upon the demurrer to the defendants' answer, did not err in construing it as setting up two separate and distinct defenses. Properly construed, the answer set up fraud in the procurement of the order which the defendants gave the plaintiff's agent for the goods, and notice by the defendants to the plaintiff, before the goods were delivered to the common carrier for shipment, that they would not accept and pay for the same.

2. One who signs an instrument written by the opposite party at interest therein, without reading it, when he is capable of doing so, can not afterwards set up fraud in the procurement of his signature thereto, when no trick or artifice was resorted to for the purpose of inducing him to thus sign it, and it was not signed under any emergency requiring haste in its execution.

3. There was no error in refusing to grant a nonsuit, as plaintiff's evidence made out a prima facie case in its favor.

4. When a contract for the sale of goods is still executory on both sides, notice by the purchaser to the seller that he will not accept and pay for the goods amounts to a breach of the contract. Thereafter the seller can not deliver the goods to a common carrier, consigned to the buyer, and, having done so, treat the contract as executed on his part, by suing the buyer for the purchase price of goods sold and delivered.

Submitted July 18, 1906.—Decided February 27, 1907.

Complaint. Before Judge Hamilton. City court of Floyd county. October 25, 1905.

*J. Branham* and *McHenry & Maddox,* for Rounsaville & Brother. *Denny & Harris,* contra.

EVANS, J. 1. The court did not, as alleged in the cross-bill of exceptions, err in construing the answer of defendants as setting up two separate and distinct defenses, and in refusing, upon demurrer, to strike the answer in its entirety. Properly construed, the answer set up fraud in the procurement of the order, whereby the defendants were induced to sign a written order for 250 gross of buttons, when they had really only agreed to purchase twelve gross of the same; and also notice to plaintiff, before the goods were shipped, that defendants would not accept and pay for them. While the plea did not in express terms allege that the order was countermanded, or that plaintiff was notified that defendants would not accept and pay for the buttons, it set forth a telegram and a letter sent by defendants to plaintiff, which, con-

strued together, amounted to this, alleged that these communications were received by plaintiff before the goods were shipped, and then further alleged that the shipment of the buttons was promptly stopped. It is alleged in the cross-bill "that the court should have construed the allegations with regard to the countermanding of the order or delivery of the goods as incident to the general defense" of fraud in the procurement of the order. We do not think so. There was no special demurrer to these allegations, and the defense therein indicated was sufficiently set forth as against a general demurrer. It is true that, according to the plea, the order was countermanded because defendants discovered, from the invoice sent them by plaintiff, that it had been written for 250 gross of buttons, instead of for 12 gross, which was the amount they intended to purchase and thought they were purchasing when they signed the order; but if the order was really countermanded, or, to speak more accurately, if the defendants, before the goods were shipped, notified plaintiff that they would not accept and pay for them, it matters not for what reason, good or bad, this was done. It might have been done upon the ground of fraud, or mistake, or for any other reason whatever; as the motive which might have induced the action of the defendants in this respect is wholly immaterial.

2. The court did not err in striking so much of defendants' plea as sought to set up fraud in the procurement of the order. The alleged fraud consisted in procuring the signature of the firm of Rounsaville & Brother to an order for 250 gross of collar buttons, when the parol agreement between the parties was that the firm would purchase of plaintiff only 12 gross. But the fraud which, according to the plea, plaintiff's agent perpetrated upon the member of the defendant firm who signed the partnership name to the order consisted merely in writing the order for 250 gross, when he should have written it for 12 gross, and then presenting the fraudulently prepared paper to J. W. Rounsaville, to be signed by the firm. He did nothing whatever to induce Rounsaville to sign the order without reading it, made no false representations to him as to its contents, but simply, silently, rapidly, and somewhat illegibly wrote the order with a pencil, and then as silently placed it "immediately and quickly" before Rounsaville, who "signed the same without reading it, believing it to be an order for 12 gross

of buttons only." From the plea, it looks like a case of blind faith in a rank stranger on the part of Rounsaville, or, at least, gross negligence in him in failing to read this brief order before signing it. The law, in such cases, does not relieve a party from the results of his own gross negligence. One about to sign a written instrument can not rely blindly on the representations of the other party as to its contents; and if, without any emergency or fraud inducing him not to read it, he fails to do so and signs it, he is bound by it. *Walton Guano Co.* v. *Copelan,* 112 *Ga.* 319, and cit. Most assuredly he will not be heard to set up fraud in the procurement of his signature to the instrument when no representation whatever as to its contents was made to him by the other party, and no trick or artifice was resorted to to induce him to sign, without reading, but he did so in mere blind reliance upon both the integrity and accuracy of such other party.

3. There was no error in refusing to grant a nonsuit, as plaintiff's evidence made out a prima facie case in its favor. The plaintiff introduced the order for the goods, signed by Rounsaville & Brother, the order showing that the goods were to be delivered "f. o. b." at Cleveland, Ohio; also the invoice of the goods, which it had sent to defendants; and then read in evidence the following admission from the defendants' answer: "Soon after the last mentioned date, which was the 25th day of March, 1903, the petitioners shipped said buttons, consigned to defendants, to Rome by rail, instead of placing them in public storage as they had threatened to do. Defendants declined to receive or accept them, for the reasons hereinbefore stated." This evidence, standing alone, showed that the goods had been ordered from the plaintiff by the defendants, that the plaintiff had accepted the order, by making out an invoice of the goods in accordance therewith and sending it to the defendants and thereafter delivering the goods to a common carrier for transportation to defendants; and such delivery being equivalent to a delivery to defendants, the contract, from this evidence, appeared to have been fully executed by plaintiff. Of course, if the plaintiff had introduced the whole of the defendants' answer, this admission of the shipment of the goods by the plaintiff to the defendants would have been explained by its context and the connection in which it was made. But the plaintiff introduced only so much of the answer as suited its purpose, and conse-

47

quently, when the motion for a nonsuit was made, it did not affirmatively appear that before the shipment of the goods the defendants had in effect notified the plaintiff that they would not receive and pay for them. The evidence as it stood when the motion for a nonsuit was made was sufficient to support a verdict in the plaintiff's favor.

4. But when the evidence was all in, the aspect of the case was entirely different. The defendants introduced the telegram and letter set out in their plea, also the following portions of a letter received by them from plaintiff, dated March 25, 1903: "Your letter of 23rd to hand. . . But we received your telegram on Monday morning, which was indefinite, so we held goods awaiting your letter. You will, therefore, wire us at once to ship them, or we will place them in public storage within a few days, and when the bill becomes due, if not paid by you, we will put the matter in the hands of R. G. Dun for collection." It also appeared, from an agreed statement of facts, that "the goods were shipped by plaintiff to the defendant on the 9th of April, 1903, from Cleveland, Ohio, to Rome, Ga.," but defendants refused to receive them. After the conclusion of the argument, the trial judge, being of opinion that the telegram and letter of defendants to plaintiff did not amount to a revocation or countermand of the order, directed a verdict in favor of the plaintiff. Herein we think he erred. The plaintiff introduced the remainder of the letter from it to defendants, a portion of which letter had been introduced by defendants, and counsel for plaintiff contend that as it appeared from a statement in this letter that the goods had been made up for the defendants, the right to countermand the order no longer existed at the time the defendants sent the letter and telegram to the plaintiff. It matters not whether the defendants had the right to revoke or countermand the order or not. If they refused to accept and pay for the goods before the same were shipped by plaintiff, the plaintiff could not recover in the present suit; for the plaintiff sued for the purchase-price of goods sold and delivered, and there was no delivery to defendants, if plaintiff had no authority from them to deliver the goods to the common carrier for them. The question whether the defendants, at the time they sent the telegram and letter to plaintiff, had the right to withdraw or revoke the offer to purchase, made in the

order, is immaterial, in the view which we take of the evidence. The material and controlling question is, whether they, by that telegram and letter, in effect, notified the plaintiff that they would not accept and pay for the 250 gross of buttons.

As it takes two parties to make a contract, when the order was signed by Rounsaville & Brother there was no contract between the parties, as the writing was not signed by the plaintiff. The order amounted simply to an offer by defendants to purchase from plaintiff a designated amount of described goods, at a stipulated price. It may, for the purposes of this case, be granted that the making out of the invoice, in accordance with the order, and mailing the same to defendants amounted to a written acceptance of the order by the plaintiff, and so bound it to execute the contract by the delivery of the goods; still the contract would be executory on its part until delivery, actual or constructive, of the goods to the defendants. And until delivery, defendants could break the contract by refusing to accept and pay for the goods; and plaintiff could not then deliver the goods to a common carrier for transportation to defendants, and thereby constitute such carrier the agent of defendants to receive them. We think the telegram from defendants to plaintiff, to hold shipment of buttons and see the letter of defendants, when followed by the letter written on the same date, wherein defendants, after stating that they were astounded at receiving an invoice for 250 gross of buttons, and denying that they bought them, declared, that they would not buy $750 worth (the amount contained in the invoice), that there was a mistake somewhere, as they only wanted 12 gross, amounting to $36, and that was the amount which they wanted plaintiff to ship, was equivalent to notice to plaintiff that defendants would not accept and pay for 250 gross, but only 12 gross. Certainly plaintiff must have understood from this telegram and letter that defendants repudiated the order for 250 gross of buttons, and did not intend to be bound by its terms. And that it did so understand is evident from the letter which it sent to defendants, wherein it threatened to place the goods in public storage, unless defendants at once wired it to ship the goods. With this information, plaintiff had no implied authority from defendants to deliver the goods for them to a common carrier; consequently delivery thereafter to such carrier was not delivery to defendants.

Delivery to a common carrier of goods consigned to a designated person is not an implied delivery to such consignee, unless such delivery is actually or impliedly authorized by him. As already intimated, when a contract for the sale of goods is still executory on both sides, notice by the purchaser to the seller that the former will not accept and pay for the property amounts to a breach of the contract. *Oklahoma Vinegar Co.* v. *Carter,* 116 *Ga.* 140.. Thereafter the seller can only hold the buyer responsible to him for such breach by pursuing one of the three remedies provided for him by section 3551 of the Civil Code. *Ib.* Under that section, he may retain the goods as his own, and recover of the buyer the difference between the contract price and the market price at the time and place of delivery, if such difference is in his favor; or he may sell the property, acting for this purpose as agent for the vendee, and recover the difference between the contract price and the price on resale, if at such resale the property brings less than such contract price; or he may retain or store the property for the vendee and sue him for the entire price. He can not treat the contract as having been executed on his part, and sue the purchaser for the purchase-price. *Oklahoma Co.* v. *Carter,* supra. This is what the plaintiff in the present case did; and hence, under the evidence, there could be no legal recovery in its behalf.

Counsel for plaintiff in error contend "that, if for any reason the delivery was not completed, plaintiff could still recover in this action, under the common-law rule set out in the last remedy of the seller given by section 3551 of the Code, to wit: 'he may store or retain the property for the vendee and sue him for the entire price.'" A complete reply to this contention is that, after the breach of the contract by defendants, the plaintiff did not pursue this remedy. It neither stored nor retained the property for the defendants, and then brought an action for the breach of the contract; but it did exactly what was done by the plaintiff in the *Oklahoma Vinegar Company* case; that is, delivered the goods, consigned to the defendants, to a common carrier, for transportation and delivery by the carrier to the defendants, and subsequently sought to recover upon an open account for goods sold and delivered. So the following language from the opinion in that case, delivered by Mr. Justice Little, will, without the slightest alteration except to cure a mere verbal inaccuracy, apply as

well to the case in hand as it did to that case. Referring to the provision of the code which counsel here invoke, the learned Justice said: "While under this last provision the seller might have stored and retained the property for the buyers after notice by the buyers that they would not receive the goods, it is sufficient to say that it did not do so, but without so doing sought to recover the price agreed on. Had it done so it might have brought an action against the buyers for the entire price of the goods. On the contrary, instead of storing and retaining the goods after the notice, it delivered them to the carrier, doubtless under the well-recognized general rule that, in ordinary transactions of bargain and sale of goods, a delivery to the carrier is a delivery to the [buyer]. It may be that the provisions of this section of our code do, to some extent at least, modify the rule found in some of the authorities above cited; but under its plain provisions, the remedy of the seller in this case was not to sue for the price of the goods, but it was remitted to its action for a breach of the contract. . . As we have seen, the plaintiff did not store or retain the goods for the vendees after the latter had given notice that they would not take and pay for the goods, so as to obtain the statutory right to sue for the value of the goods; and not having done so, and the legal effect of the notice given being to cause a breach of the contract, the only remedy which the plaintiff had was to institute an action to recover damages for the breach. Hence its petition, which treated the contract as an executed one on its part, and sought to recover the purchase-price of the goods, was subject to a plea in abatement of the action."

The contention of counsel which we have just been considering is based upon the following facts. The goods, which were shipped by plaintiff to defendants, from Cleveland, Ohio, to Rome, Ga., on April 9, 1903, after reaching the latter point were there stored by the final carrier in its freight warehouse, where they remained until November 13, 1903, when, in order to prevent them from being sold by the railroad company as unclaimed freight, they were, under a written agreement between the parties to this case, without prejudice to the cause, taken out and stored, free of charge, by defendants, to abide the final judgment in the case. Counsel for plaintiff in error, while frankly admitting that "the status of the defendants at the time the consent agreement was

entered into was not changed by that agreement or the action taken thereunder, contend "that the goods were in storage at the time the . . agreement was signed," and, "by consent, they continue in storage." As we understand this contention of the learned counsel, it simply begs the question under consideration. At the time of the written agreement between the parties, the goods were simply stored by the final carrier, in its warehouse, at Rome, Ga., in the usual course of its own business, as unclaimed freight; and when they were taken from the railroad warehouse by defendants, under this agreement, the storage status of the goods was unchanged. To all intents and purposes they still remained stored in the railroad warehouse, as unclaimed freight. They were not stored in the railroad's warehouse by the plaintiff, nor at the instance of the plaintiff. They never have been held and stored by the plaintiff for the defendants, so as to bring the facts of the case within the provisions of the statute in reference to the right of the seller, after the purchaser refuses to accept and pay for the goods, to store or retain the goods for the buyer and then sue him for the purchase-price. The plaintiff undertook, not to store the goods for the defendants, but to deliver them to the defendants. It failed in its effort to deliver, because its delivery to a common carrier was unauthorized by the defendants, and they refused to accept delivery from the carrier. The case, upon its facts, is controlled by the decision rendered in the *Oklahoma Vinegar Company* case, above cited; and consequently the trial judge, who might well have directed a verdict for defendants, erred in refusing to grant a new trial.

*Judgment reversed on main bill, and affirmed on cross-bill of exceptions. All the Justices concur except Fish, C. J., absent.*