CASE THRESHING MACHINE COMPANY *v.* BROACH.

FISH, C. J. 1. Where the parties have reduced to writing what appears to be a complete and certain agreement, importing a legal obligation, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the whole of the agreement between them, and parol evidence of prior or contemporaneous conversations, representations, or statements will not be received for the purpose of adding to or varying the written instrument. If such writing contains a warranty of some kind or to some extent, parol evidence will not be admitted to extend, enlarge, or modify that which the writing specifies. *Bullard* v. *Brewer,* 118 *Ga.* 918 (45 S. E. 711); *Holcomb* v. *Cable Co.,* 119 *Ga.* 466 (46 S. E. 671); 2 Mechem on Sales, § 1254; *Fay & Eagan Co.* v. *Dudley,* 129 *Ga.* 314 (58 S. E. 826); *Seitz* v. Brewers' Refrigerating Machine Co., 141 U. S. 510 (12 Sup. Ct. 46, 35 L. ed. 837).

2. Where a written contract of bargain and sale stipulates that "This sale is made under inducements and representations herein expressed and no others," it is not a valid defense to an action for the price of the goods that the purchaser was induced to enter into the agreement by reason of false representations made by an agent of the seller, but not contained in the contract, when there is nothing to show that the purchaser was misled or deceived as to its contents, or in any manner pre-

vented from ascertaining the same. *Equitable Manufacturing Co.* v. *Biggers,* 121 *Ga.* 381 (49 S. E. 271). See also *Biggers* v. *Equitable Manufacturing Co.,* 124 *Ga.* 1045 (2), (53 S. E. 674).

3. Applying the foregoing rulings to the facts of the present case, as shown by the written contract between the parties, the court erred in not dismissing the affidavit of illegality to the mortgage execution; for, even if the alleged representations of the salesman of the plaintiff company, as set out in the affidavit, were fraudulent and made to induce the defendant to purchase the engine which he bought under the terms of the written contract signed by him, and for part of the purchase-price of which he gave his notes and the mortgage to secure the payment of them, it appears from such contract that he expressly agreed that the company should not be bound by any representations or misrepresentations made by such agent. There was no averment in the illegality that any device or trick was perpetrated upon the defendant by the company or its agent to induce him to sign the written contract. In this connection see the cases above cited, and *Rounsaville* v. *Leonard Manufacturing Co.,* 127 *Ga.* 735 (2), 736 (56 S. E. 1030).

(a) The present case, wherein there was a complete and certain agreement between the parties, is manifestly different from such cases as *McCrary* v. *Pritchard,* 119 *Ga.* 876 (47 S. E. 341), *Pryor* v. *Ludden & Bates,* 134 *Ga.* 288 (67 S. E. 654, 28 L. R. A. (N. S.) 267), *Anthony* v. *Cody,* 135 *Ga.* 329 (69 S. E. 491), and such other cases where the action was based on a promissory note which did not purport to contain the entire contract between the parties.

(b) The case under consideration differs also from such cases as *International Harvester Co.* v. *Dillon,* 126 *Ga.* 672 (55 S. E. 1034), wherein the defense set up was a breach of a warranty contained in the written agreement, while in the present case the defense sought to be set up was the misrepresentations of the agent of the plaintiff, made during the negotiations of the sale, and prior to the execution of the written contract.

4. The court having erred in refusing to dismiss the affidavit of illegality, it is unnecessary to pass upon the motion for a new trial.

*Judgment reversed. All the Justices concur, except Hill, J., not presiding.*

FEBRUARY 16, 1912.

Mortgage foreclosure. Before Judge Meadow. Oglethorpe superior court. September 16, 1910.

Broach bought of Randall, the plaintiff's salesman in charge of its Atlanta office and storeroom, a twelve-horse-power compounded portable engine, at the price of $850, paying in cash $200 and freight charges of $55.40, and giving his notes for $650, with a mortgage on the engine. He signed also a written order or contract of sale, which Randall signed as salesman. Upon refusal to pay the notes, foreclosure of the mortgage was commenced; and Broach interposed an affidavit of illegality. The plaintiff moved to dismiss this affidavit as insufficient in law to arrest the fore-

closure, because it undertook to vary the written contract of sale by setting up a parol agreement and representations made at the time of its execution, and a warranty different from the one therein contained. The motion was overruled, and, after verdict for the defendant, a new trial was denied. The plaintiff excepted to these rulings.

The written order for the engine contained the following stipulations: "No person has any authority to waive or alter or enlarge this contract, or to make any new or substituted or different contract, representation, or warranty. Salesmen, mechanics, and experts are not authorized to bind the company by any contract or statement. Said machinery is purchased upon and subject to the following mutual and independent conditions, and none other, namely: It is warranted to be made of good material, and durable, with good care, to do as good work under the same conditions as any made in the United States, of equal size and rated capacity, if properly operated by competent persons with sufficient steam or horse-power, and the printed rules and directions of the manufacturers intelligently followed. If by so doing, after trial of ten days by the purchasers, said machinery shall fail to fill the warranty, written notice thereof shall at once be given to J. I. Case Threshing Machine Company at Racine, Wisconsin, and also to the agent through whom received, stating in what parts and wherein it fails to fulfill the warranty, and reasonable time shall be given to said company to send a competent person to remedy the difficulty, the purchaser rendering necessary and friendly assistance, said company reserving right to replace any defective part or parts; and if the machinery can not be made to fill the warranty, the part that fails to be returned by purchaser free of charge to the place where received, and the company notified thereof, and at the company's option another substituted therefor that shall fill the warranty, or the notes and money for such part immediately returned and the contract rescinded to that extent, and no further claim made on the company. Failure so to bind [?] such trial or to give such notices in any respect shall be conclusive evidence of due fulfillment of warranty on the part of said company and that the said machinery is satisfactory to the purchasers, and the company shall be released from all liability under the warranty. Any assistance rendered by the company, its agents or servants, in op-

erating said machinery or in remedying any actual or alleged defects, either before or after ten days trial, shall in nowise be deemed any waiver, or excuse for any failure of the purchaser to fully keep and perform the conditions of this warranty. When at request of purchaser a man is sent to operate the said machinery, which is found to be carelessly or improperly handled, said company putting same in working order again, the expense incurred to J. I. Case Threshing Machine Company shall be paid by the purchaser. If any part of the machinery, excepting belting, which is not warranted, fails, from defect of material, while this warranty is in force, the company has the right to repair or replace the same, on presentation of the defective part or parts; but deficiency in any piece shall not condemn other parts, and purchaser shall expressly waive all claims for damages on account of the non-fulfillment of said warranty by any of the above-described machinery. Each machine and attachment is ordered at a separate fixed price, which price, unless otherwise specifically agreed, bears the same ratio to the aggregate price above specified as the company's 1906 list price of each said machine and attachment bears to the aggregate list price of all said machines and attachments. This order is divisible as to each machine and attachment ordered, and the failure of any separate machine or attachment to give the warranty shall not affect the rights of the parties with respect to any other machinery sold the purchasers or any warranty of such other machinery, and no cause of action arising out of this contract or transaction shall be offset or counterclaimed against any liability of the purchaser arising out of any other contract or transaction. In no event shall the company be liable otherwise than by return of cash and notes actually received by it. Failure to fully settle on delivery as above provided, or to comply with any of the conditions of this warranty on purchaser's part, or any change in the printed terms of its warranty or the conditions thereof by any persons whomsoever, agent or otherwise, by addition, erasure, or waiver, or any abuse, misuse, unnecessary exposure of machinery, or waste committed or suffered by the purchasers, discharges the company from all liabilities whatever. No representation made by any person as an inducement to give and execute this order shall bind the company. The purchaser hereby waives notice of the acceptance of this order by the company."

The affidavit of illegality was in substance as follows: When Broach went to buy, he asked Randall to show and price to him a fifteen-horse-power engine and boiler, stating that he wanted it to run his sawmill with a forty-eight-inch saw. Randall said he had in stock no fifteen-horse-power simple engine, but had and would sell Broach a twelve-horse-power compounded and portable engine that would do the work of a fifteen-horse-power simple engine with less fuel and water, and would operate his sawmill with ease and efficiency, and would develop at least as much horse-power as any fifteen-horse-power simple engine; and urged Broach to purchase the same. Broach then stated to Randall that he (Broach) was a farmer, not a machinist, and knew nothing of the construction and principles of the different kinds of engines, or of a compounded engine and whether it was or could be made as efficient as a simple engine of nominally greater horse-power rating; and Randall wilfully and knowingly made to him the statements and representations just set forth, for the purpose of inducing him to buy the engine for which he contracted. Immediately upon receipt of it he undertook to operate his sawmill with it; and it failed completely to develop sufficient power to run the saw, although he used all the skill at his command, guided by such instructions as were furnished by the plaintiff. When he had exhausted his own ingenuity and availed himself of all the assistance and suggestions of the plaintiff, he immediately reported these failures to the plaintiff, which responded by sending its agents and mechanics with instructions so to alter, repair, and reconstruct the engine as to make it do the work of driving the sawmill; all of which efforts failed to increase or improve the power of the engine to the stipulated requirements. Convinced from his own efforts, and those of the plaintiff, that the engine could not be made to perform the services contracted for, and that consequently the engine was worthless to him, he tendered it to the plaintiff, offered to rescind the contract of purchase, and demanded that the plaintiff refund to him the cash payment and cancel the notes, which the plaintiff refused. Wherefore he prays that the contract be adjudged fraudulent and void, and for judgment against the plaintiff.

*Joel Cloud* and *Carey, Upham & Black,* for plaintiff.

*William M. Howard* and *Cobb & Erwin,* for defendant.