(No. 5668. April 9, 1931.)

JOHN H. TROENDLY, Jr., Respondent, v. J. I. CASE
COMPANY, Sometimes Called THE J. I. CASE
THRESHING MACHINE CO., a Corporation, Appellant.

[297 Pac. 1103.]

H. R. Turner, for Appellant.

J. H. Barnes, for Respondent.

VARIAN, J.—Respondent brought this action to rescind a contract for the purchase of certain harvesting machinery and for damages, on account of certain alleged misrepresentations inducing him to enter into the contract. The cause was tried to the court with a jury sitting in an advisory capacity. From a judgment rescinding the contract and awarding damages defendant appeals.

The complaint alleges in effect that on or about July 17, 1929, plaintiff entered into a contract in writing with defendant whereby he agreed to buy a "Prairie Combine" grain harvester, rotating weed screen with grain bin, straw spreader, header truck, clover attachment, pick-up attachment and one 12-foot windrower with 3-foot extension; that all of said machinery except the windrower "were designed and furnished for use on and as a part of said combined grain harvester and thresher; that the windrower was a separate machine designed and furnished to cut the grain and place it in windrows preparatory to threshing"; that plaintiff made a down payment of $713.93 and executed two promissory notes to defendant, one for $1200 due November 1, 1929, and another for $1474.50 due November 1, 1930; that prior to the execution and delivery of the contract plaintiff had several conversations with defendant's agents wherein said agents represented "that said machinery was well made of good material and would prove durable with good care, and also that it would do as much and as good or better work than any other make of machinery, and promised that if plaintiff would agree to buy said machinery they would include said representations in the contract

in the form of a warranty; that said representations were thereafter included in said written contract, and before the execution thereof by plaintiff''; that said warranty was a written confirmation of the representations made to plaintiff by defendant's agents during the negotiations for the sale of said machinery and was inserted in the contract as an inducement for plaintiff to enter into said contract; that said agents at the time promised plaintiff, as a further inducement, that if he purchased said machinery he would receive first-class service and expert advice in the care and operation of said machinery. The complaint further alleges the falsity of the representations made and specifies certain particulars in which the machinery, or parts thereof were defective; that upon delivery it was rigged and placed in operation under the supervision of an expert Case operator in the employ of defendant and of other operators sent out by the Case Company during the season of 1929; that because of the excessive cost of keeping the machinery in repair and operation plaintiff was damaged in the sum of $1138, the difference in the amount received for threshing and the cost of keeping the machine in repair and operation; that the windrower was not able to do the work required of it and on demand of plaintiff was taken back by defendant, who credited plaintiff with the purchase price thereof, $701.50, on the $1200 note; that plaintiff informed defendant's agents soon after said combine was placed in operation that it was not doing its work and did "not fulfill defendant's representations and warranty," and demanded that they take back said combine and attachments and return the down payment and notes; that defendant's agents refused to comply and represented that the combine could be adjusted and promised to have other experts in its employ aid in adjusting and testing the machine in an effort to fulfil the terms of said representations and warranty; that they "assured plaintiff he would get a 'square deal,' and that his losses would be made up by the good work of said machine when it had been properly adjusted to the local working conditions"; that, because of these

assurances, plaintiff, who was obligated by a number of contracts for threshing grain grown by other farmers, continued to operate the machinery under protest; that he withdrew from as many of his threshing contracts as was possible for him to do, and after completing his other contracts, informed defendant that its combine was a failure and had not lived up to the representations and warranty made before the machine was purchased, that he would no longer be bound by said contract "because of the false and fraudulent representations by which he was induced to enter into it," and demanded the same be canceled, his down payment and notes returned, "and that defendant accept the return of said machinery." It further alleges that defendant has failed to comply with these requests.

Appellant answered admitting the execution of the contract and notes, the payment of $652 and delivery of the machinery mentioned, together with the return of the windrower and crediting the price thereof on the note maturing November 1, 1929, and denying all false statements or misrepresentations. The answer also affirmatively pleads certain provisions of the contract not necessary to refer to.

By way of cross-complaint appellant sets up the two promissory notes mentioned, the execution of a chattel mortgage upon all the property mentioned in the contract of sale to secure payment of the same, the breach of the conditions of the chattel mortgage relative to payment, prays for a judgment for $2,073 principal, with interest and attorney's fees, and for the foreclosure of said chattel mortgage.

The trial judge submitted twenty-seven interrogatories to the jury, which found in favor of respondent on every issue. Thereafter, the conclusions of the jury were embodied in and constitute the court's findings. Judgment requiring plaintiff to return the machinery, except the windrower, to defendant; that defendant return the promissory notes of plaintiff, the down payment of $713.93, with interest, $1076.07 special damages and cost of suit. Defendant appeals from the judgment.

The evidence is uncontroverted that the combine and its attachments did not work properly from the start. The country over which it was used consists of lands irrigated by the corrugation method. There is much alfalfa and sweet clover growing in the grain which, if harvested with the combine without the use of the pick-up attachment, afterward undergoes a process of sweating resulting in mould in the warehouse, and grain so harvested will not knowingly be received by the elevators. Where the pick-up is used the grain is first cut in a narrow swath by the windrower, allowed to ripen for several days, and then is picked up by the pick-up attachment and conveyed to the combine where it is threshed in the usual manner. In the instant case trouble developed with the windrower and the pick-up attachment. Late in September the windrower was discarded and on October 18, 1929, a settlement for its price was arrived at and by agreement that amount was applied to the payment of the $1200 note due November 1, 1929. Appellant had its experts assemble and operate the machine for some time, at its own expense. Afterwards the experts left and stated, according to the respondent, that they could not make the machine work. Nevertheless, respondent continued to operate the machine on his neighbors' fields and his own for a period of eighty days. From time to time agents of the appellant visited the machine and endeavored to correct defects in its operation. Respondent contends that he notified Mr. Homer, assistant district manager of appellant, living at Salt Lake City, and protested to other agents of appellant several times that the combine was not satisfactory and that it and the windrower were both failures, and as late as October 18, 1929, when the windrower settlement was made. He continued to use the machine, however, and never made any attempt to deliver it to appellant, nor gave any notice as prescribed by the terms of the contract.

Respondent's theory is that false representations were made to him with regard to the machinery sold and that, while these representations were afterward embodied in the

contract as warranties, his action here is upon the oral false representations made prior to entering into the written contract of purchase; that by reason of these representations as to the machine he was fraudulently induced to enter into the subsequent contract. The oral representations in this case are nearly identical with the written warranties.

The general rule is, that "where the contract induced by the fraud contains provisions covering the subject matter of the false representations, the defrauded party has an election to sue on the contract or to sue for the tort, the fact that he has a remedy on the contract being no impediment to his maintaining an action for deceit, as the tort is not merged in the contract." (27 C. J. 17, sec. 127.) This is the rule where the warranty is made with knowledge of its falsity. (24 R. C. L. 339, sec. 628.)

██ The execution of a warranty covering the alleged fraudulent representations made prior to the execution of the contract, where the evidence fails to show the seller is guilty of any artifice to prevent the purchaser from examining and judging for himself, indicates an intention to rely upon the warranty and no action can be predicated upon the oral representations. (24 R. C. L. 339, sec. 628; *Advance-Rumley Thresher Co. v. Schawo et al.*, 126 Kan. 563, 268 Pac. 738; *Williams Transp. Line v. Cole Transp. Co.*, 129 Mich. 209, 88 N. W. 473, 56 L. R. A. 939; *Reeves v. Corning et al.*, 51 Fed. 774, 782.)

 The present case falls within the latter rule. The pick-up attachment was a new feature of the Case Combine and none of the parties, so far as the evidence discloses, knew that it would not work upon fields irrigated by the corrugation method in use in the Twin Falls section. Nor do the representations in the instant case appear to have been made "knowingly or recklessly" within the meaning of the rule announced by this court in *Breshears et al. v. Callender*, 23 Ida. 348, 131 Pac. 15. The fact that the respondent was induced to enter into the contract because of the promise to include the representations sued on here as warranties, as he pleads, clearly indicates an intention to

rely upon the contract. Again, respondent has not placed himself in position to rescind under the facts of this case. He admittedly continued to operate the machinery for 80 days after he knew it was defective, harvesting 700 acres of grain, including 200 acres of grain, together with 20 acres of beans, belonging to himself. He likewise continued to use the machinery as his own long after the last expert sent by appellant to remedy the defects left without doing so. (*Minnesota Thresher Mfg. Co. v. Lincoln et al.,* 4 N. D. 410, 61 N. W. 145.) He failed to deliver the machinery to appellant or to offer to do so and his retention and use of it was inconsistent with any theory of rescission, or of further testing the machine. His excuse for not surrendering the machinery to appellant, in effect was, because he had not finished the work he had contracted to do and had not threshed his own crops. This would not excuse him from promptly acting upon his election to rescind. If respondent has any remedy under the facts disclosed by the evidence it must be for breach of warranty under his contract. (See *Conlin v. Studebaker Bros. Co.,* 175 Cal. 395, 165 Pac. 1009; *Pratt-Gilbert Co. v. Renaud,* 25 Ariz. 79, 213 Pac. 400; *Estes v. Reynolds,* 75 Mo. 563.)

Judgment reversed. Costs to appellant.

Lee, C. J., and Budge, Givens and McNaughton, JJ., concur.