(No. 5720.   October 9, 1931.)

ADVANCE–RUMELY THRESHER COMPANY, INC., a Corporation, Appellant, v. GLEN JACOBS and A. C. JACOBS, Respondents.

[4 Pac. (2d) 657.]

Merrill & Merrill, for Appellant.

Frank L. Soule and E. H. Hillman, for Respondents.

BUDGE, J.—Appellant sold and delivered to respondents a tractor and one set of five and one-half inch spade cleats (such equipment being hereinafter referred to as a "tractor") and thereafter respondents executed and delivered to appellant two promissory notes in payment thereof and secured said notes by chattel mortgage upon said tractor. Upon respondents' failure to meet the payment as stipulated in said notes and mortgage, appellant declared the entire indebtedness due and proceeded by notice and sale to foreclose the chattel mortgage. Under such foreclosure the tractor was sold at public auction and purchased by appellant, who indorsed upon the notes the net amount for which said tractor was sold. Appellant brought this action to recover the balance due upon the notes, including attorneys' fees, etc. Respondents' answer in effect constitutes a general denial of the allegations of the complaint with an affirmative defense of fraud and misrepresentation inducing the purchase of the tractor and the execution of the notes and mortgage covering the same. The allegations of such affirmative defense are adopted by respondents as a cross-complaint, which appellant denied, wherein it is sought to recover freight charges paid by respondents in connection with the transportation of the tractor. Upon the issues thus framed

the cause was tried to the court and a jury, resulting in verdict and judgment in favor of respondents, from which judgment, and from a motion for new trial, which was denied, this appeal is prosecuted.

Appellant makes twenty-six assignments of error, which are grouped in its brief under the following heads: That the court erred in the admission, over appellant's objection, of certain evidence and in refusing to strike certain evidence; that the court erred in refusing to direct a verdict in appellant's favor, due to the insufficiency of the evidence in support of the answer and cross-complaint; and that the court erred in giving certain instructions. We will discuss the questions in the order stated.

The contract or order for the purchase of the tractor contains the following provisions:

"Said machinery is warranted to be well made and of good material, and with proper use capable of doing as good work as any other machine of the same kind, size and rated capacity, working under like conditions, . . . .

"There are no representations, warranties or conditions, express or implied, statutory or otherwise except those herein contained and no agreement collateral hereto shall be binding upon either party unless in writing hereupon or attached hereto, signed by Purchaser and accepted by Vendor at its head office. . . . .

"This contract shall not be obligatory upon Vendor until accepted by it at its head office, notice of which acceptance is waived. . . . . "

Upon the trial of the cause appellant insisted throughout that evidence was not admissible to vary the terms of the written contract entered into between the parties, particularly where the written contract contained a provision that no representations or warranties of the parties other than those contained in the contract or attached thereto in writing should be binding upon the parties. On the other hand, respondents contended that representations, if proven to be false, made prior to and which induced the execution of the contract, notes and mortgage were admissible upon

the theory that fraud in its inception vitiated the contract and the result was as if no contract had been entered into. In particular respondents rely upon two alleged false and fraudulent representations alleged to have been made by the agent of appellant, namely: That the tractor was so constructed that it would develop sufficient power in high gear to pull four fourteen-inch beam bottom plows to a depth of six inches on the grades existing on respondents' farm, where said tractor was to be used and would do so with a consumption of two and three-fourths gallons or less of gasoline or kerosene per acre. Respondents contend that said representations were made prior to the excution of the contract, that the same were false and untrue, were material and the inducement that led respondents to enter into said contract; that respondents believed them to be true, relied and acted thereon and were deceived and suffered injury thereby. Such representations were not contained in the contract but were admitted by the trial court evidently upon the theory contended for by respondents. Respondents also take the position that this defense is not based upon the breach of any of the warranties contained in the contract but upon fraud in its inception inducing the execution of the same; that fraud vitiates everything and therefore in truth and in fact no contract was ever entered into.

Thus, the question is squarely presented: Is evidence of fraudulent representations, made prior to and inducing the execution of a contract, admissible where the written contract signed by the parties recites in effect that all representations and agreements are contained therein and no others are binding upon the parties? This is the first time this question has been presented to this court, although in three cases cited by appellant similar provisions were contained in contracts under consideration. We deem it appropriate here to point out the distinctions between these cases and the instant case before disposing of the question before us.

The case of *Troendly v. J. I. Case Co.*, 50 Ida. 506, 297 Pac. 1103, is distinguishable from the case at bar in that

the alleged false representations relied upon were "nearly identical with the written warranties," and were substantially embodied in the contract as warranties by agreement of the parties, and the court announced the rule that " 'where the contract induced by the fraud contains provisions covering the subject matter of the false representations, the defrauded party has an election to sue on the contract or to sue for the tort, the fact that he has a remedy on the contract being no impediment to his maintaining an action for deceit, as the tort is not merged in the contract.' 27 C. J., 17, § 127,"—and held that "The exaction of a warranty covering the alleged fraudulent representations made prior to the execution of the contract where the evidence fails to show the seller is guilty of any artifice to prevent the purchaser from examining and judging for himself, indicates an intention to rely upon the warranty, and no action can be predicated upon the oral representations."

In that case the vendee, before signing the contract, required the vendor or his agent to incorporate in the written contract, as warranties, all of the representations and agreements, and the court therefore correctly held that "If respondent has any remedy under the facts disclosed by the evidence, it must be for breach of warranty under his contract."

The case of *Kemmerer v. Pollard*, 15 Ida. 34, 96 Pac. 206, is distinguishable from the instant case in that there the defense was based upon breach of contract with cross-complaint attempted to be based on deceit and fraud. The court held that the evidence was insufficient to establish the defense and that the cross-complaint was insufficient to charge deceit and fraud and that fraud was not proven.

The case of *Toledo Computing Scale Co. v. Young*, 16 Ida. 187, 101 Pac. 257, is distinguishable from the instant case in that, as suggested by respondents, the defense was not in fraud but was based upon an alleged breach of warranty or breach of contract.

Returning now to the main question involved, the jury, upon conflict in the evidence, found that the representations

made by appellant, through its agent, prior to and inducing the execution of the contract were material and were false and fraudulent; that the same were known by appellant to be false and fraudulent; that respondents believed and acted upon such representations, were thereby induced to enter into the contract and were damaged thereby.

The contentions of appellant and respondents were considered and disposed of in the case of *Sharkey v. Burlingame Co.*, 131 Or. 185, 282 Pac. 546, 552, where, in a well-considered opinion, the supreme court of Oregon said:

"There is a line of authorities holding that it is competent for parties to enter into a contract stating that no representation, agreement or promise has been made except those stated in the contract and that if the contract contains such a promise the stipulation is enforceable and will bar a suit for rescission because of any antecedent fraudulent representation, agreement or promise not contained in the written contract. This seems to be the doctrine in Massachusetts, *Sullivan v. Roche,* 257 Mass. 166, 153 N. E. 549, *Colonial Dev. Corp. v. Bragdon,* 219 Mass. 170, 106 N. E. 633, and *O'Meara v. Smyth,* 243 Mass. 188, 137 N. E. 294; in Georgia, *Threshing Machine Co. v. Broach,* 137 Ga. 602, 73 S. E. 1063; and in New Jersey, *Edison Fixture Co. v. Copoulos,* 3 N. J. Misc. R. 174, 127 Atl. 551; and perhaps in some other states.. The ground for decision in those cases seems to be that where parties have made a definite agreement in which they state that no representations have been made other than those contained in the contract that the contract as made, should be enforced in order that the relations arising from it should be certain and definite and that to permit parol testimony to show prior representations, after the parties had stipulated that there were no such representations, would defeat the purposes of the contract and contradict its very terms, and therefore that parol evidence of antecedent fraud or fraud which entered into the inception of the contract and not into its execution is inadmissible, although if it entered into the execution of the contract it is admissible. *This doctrine has not been followed by*

*a majority of the courts of equal authority and is not the rule in England or in most of the states and has not received the support of the leading text writers in this country.* The majority of the decisions state the rule to be that if a contract is induced by fraud, whether the fraud enters into the execution of the contract or is antecedent to it, the contract cannot stand regardless of any stipulation to the contrary contained in the contract, and that, if the effect of the stipulation is such that it amounts to a waiver of fraud practiced on the complainant and which induced him to enter into the contract, this clause is of no effect because being against·public policy and because allowing the guilty party to profit by his own wrong, and denying the application of the principle that fraud vitiates any contract. Holding to this effect are *Haight v. Hayt,* 19 N. Y. 464; *Bridger v. Goldsmith,* 143 N. Y. 424, 38 N. E. 458; *Universal Fashion Co. v. Skinner,* 64 Hun, 293, 19 N. Y. Supp. 62; *Jackson v. State,* 210 App. Div. 115, 205 N. Y. Supp. 658; *Pearson & Son, Ltd., v. Lord Mayor etc. of Dublin,* (1907) A. C. 351; *Jordan v. Nelson,* (Iowa) 10 A. L. R. 1464, 178 N. W. 544; *Case Threshing Machine Co. v. McKay,* 161 N. C. 584, 77 S. E. 848; *Whiting v. Squeglia,* 70 Cal. App. 108, 232 Pac. 986; *Thompson Co. v. Schroeder,* 131 Minn. 125, 154 N. W. 792; *Dieterich v. Rice,* 115 Wash. 365, 197 Pac. 1; *Newman v. Smith,* 77 Cal. 22, 18 Pac. 791; *Hofflin v. Moss,* (C. C. A.) 67 Fed. 440; *Elliott Supply Co. v. Green,* 35 N. D. 641, 160 N. W. 1002; *Berrendo Irrigated Farms Co. v. Jacobs,* 23 N. M. 290, 168 Pac. 483; *N. W. Rug Mfg. Co. v. Leftwich Hardware & Furniture Co.,* 176 Ark. 212, 2 S. W. (2d) 1109; *Shepard v. Pabst,* 149 Wis. 35, 135 N. W. 158; Williston on Contracts, § 811; 5 Wigmore on Evidence (2d Ed.) § 2439; 2 Mechem on Agency (2d Ed.) § 1997; 14 Am. & Eng. Ency. of Law (2d Ed.) 200. See also *Arnold v. National Analine & Chem. Co.,* (C. C. A.) 20 Fed. (2d) 365, 56 A. L. R. 4.''

We feel constrained to adopt the latter and majority rule for the reasons expressed in the foregoing opinion· and cited cases, namely: that such a provision is contrary to

public policy; that it allows the guilty party to profit by his own wrong and denies the application of the rule that fraud vitiates any contract.

In a note (56 A. L. R. 57) numerous cases supporting the rule we have adopted have been collected. It follows that the court did not err in admitting or refusing to strike the evidence complained of.

A delivery receipt for the tractor reciting that the tractor was received pursuant to the written order and warranties contained therein, and "that said written order and warranty contains all the agreements and understandings between us on account of or pertaining to said purchase," and several service receipts reciting, among other things, that a service mechanic of appellant had finished experting the tractor and had remedied and removed all causes of complaint respondents had against said machine, which were signed by Glen Jacobs, one of the respondents, were offered, as stated by counsel for appellant, for impeachment purposes only and were admitted for that purpose. Where the evidence is stated to be introduced for a certain purpose, it should be restricted to that purpose, for it is manifest that any other rule would result in surprise and injustice. (38 Cyc. 1341.) The delivery receipt was not such an instrument, being merely a receipt, as would be objectionable under the rule as an attempt to vary the terms of a written contract if the original contract was unenforceable by reason of fraud inducing its execution. It falls with the contract. The service receipts, being offered for impeachment purposes only and submitted to the jury upon appropriate instructions to that effect, the jury was at liberty to believe the explanation of the respondent, Glen Jacobs, that the same were given for the purpose of enabling the mechanic to receive his compensation from appellant, and that all except one, which was partially filled in, were signed in blank.

We do not think that the point sought to be raised that respondents adopted and confirmed the contract and were bound thereby can be sustained for the reason that

they failed to return the tractor as stipulated in the contract. There is abundant evidence to justify the conclusion evidently reached by the jury, that the tractor was retained by respondents at the repeated requests of appellant.

Appellant contends that the court erred in permitting respondent Glen Jacobs to testify that he informed his father (respondent A. C. Jacobs) as to the representations made by appellant's agent. Counsel for appellant cite no authorities in support of their contention and the following are the only authorities we have been able to find upon the subject. The rule in such cases has been announced as follows:

"Representations made to a third party with the intent that they may be shown to complainant may properly be relied on by the latter." (26 C. J. 1162, sec. 74.)

"It is not necessary that representations should have been made directly to the complainant, as recovery can be had for representations made to another with the intent or knowledge that they should or would be repeated to complainant." (26 C. J. 1121, sec. 47.)

"If plaintiff claims to have been deceived by statements made to a third person acting on his behalf he may show how the statements were communicated to him." (27 C. J. 53, sec. 182.)

In the case of *Sigafus v. Porter,* (C. C. A.) 84 Fed. 430, an action for damages based on fraudulent representations, one Egan was agent of plaintiff, and in approving the admission of certain letters from Egan to plaintiffs containing representations made by defendant to Egan, the court said (p. 437):

"Certain letters of Egan to Morse and Platt (including one to Roberts, Platt's secretary) were put in evidence, to which defendant duly objected as 'not binding on defendant, and as immaterial, irrelevant and incompetent.' No claim is made that they were 'binding on defendant.' It is the other grounds of objection only that need be considered. The letters were written while Egan was conducting his examination at the mine. The action is to recover dam-

ages for false and fraudulent representations alleged to have been made by defendant, and in reliance upon which representations the plaintiffs purchased the mine. As matter of fact the defendant and plaintiffs never met (until the day title was passed). It is evident, therefore, that plaintiffs must show some conveyance of the representations from defendant to plaintiffs. This they undertook to do by proving that Sigafus deceived Egan; that Egan, relying on Sigafus' misrepresentations, made a most favorable report to his employers, upon the strength of which they bought. Manifestly, to do so they would have to establish two entirely separate propositions,—one the misrepresentations by Sigafus to Egan, and the other the reproduction in some form of those misrepresentations by Egan in his report to his employers. It is practically conceded that Egan's report was competent, relevant and material. No objection was interposed to its reception. Supplemented by the testimony of plaintiffs, it tended to show on what they relied when they decided to purchase. Whether this report contained material misrepresentations, which were induced by fraudulent representations or concealments of Sigafus, which misled Egan, was a question to be established by other proof; but when established, the chain of proof would be complete. The court correctly charged the jury that, if they believed the plaintiffs 'were influenced by Egan's corroboration of the Burnham report, and by his own report, then the important question is whether Egan was deceived and misled by the defendant and whether he (defendant) falsely represented to him (Egan) the facts stated in the two reports. But, if Egan's 'report' on the mine was admissible, it is difficult to see why these other written descriptions sent by him to his employers of what he found there, and of what was the present appearance and past history of the mine, are not equally so. It would be for the jury to determine whether any material false statements in them were induced by fraudulent misrepresentations by defendant, relied upon by Egan. Any sentences in the letters not thus material or relevant might have been

excluded from the jury had attention been called to them specifically; but, as a whole, each letter was admissible as a part of Egan's report to his employers, upon which there was evidence tending to show that plaintiffs relied in making their purchase.''

In the case of *Williams v. Bedenbaugh,* 215 Ala. 200, 110 So. 286, 290, the court disposed of a similar contention, saying:

''It appears, without dispute, that the negotiations began and were conducted by Mrs. Riddlesperger, the mother of this plaintiff, with reference to the investment of her own money; that the misrepresentations were made wholly to her; that during the time the defendants were advised this plaintiff was also investing to the amount of $600, and stock was issued to her accordingly. Mrs. Riddlesperger was the plenary representative or agent of this plaintiff, throughout the transaction, and invested plaintiff's money in connection with her own. Clearly there was a direct causal connection between the alleged misrepresentations to Mrs. Riddlesperger and the injury suffered by the plaintiff. All these matters affecting Mrs. Riddlesperger were competent as to this plaintiff, under proper pleading. That the plaintiff was unknown to the defendants, when the representations were made, matters not, if they induced Mrs. Riddlesperger to invest her daughter's money, and such fact came to the knowledge of the defendants at the time the transaction was closed.''

It follows that the court did not err in the admission of the testimony complained of, particularly in view of the fact, known to appellant's agent, that Glen Jacobs acted in behalf of respondent A. C. Jacobs in the negotiations leading up to the execution of the contract involved. While, technically, it might be contended that there is a variance between the answer of respondent A. C. Jacobs and the proof, in that the representations were made indirectly and not directly by the agent of appellant, we are not disposed to hold that such variance was so material as to result in prejudicial error.

■ Appellant also complains of the admission, over its objection, of statements by A. C. Jacobs as to what his son, Glen Jacobs, told him the agent of appellant had represented, upon the ground that the same were hearsay, incompetent, irrelevant and immaterial. However, no objection upon the ground of hearsay was made and the authorities last cited establish the competency, relevancy and materiality of such evidence.

■ The second group of assignments attacks the action of the court in refusing to direct a verdict for appellant. Respondents having made *prima facie* proof of the allegations of their answer and cross-complaint at the time appellant made its motion, the court did not err in refusing to direct a verdict for appellant.

■ Coming now to the last group of assignments of error relating to the giving of certain instructions, all except one are based upon appellant's theory of the questions of fraud, which has heretofore been disposed of, and need not be further considered. The remaining instruction concerns the definition of the term "material representation." Instructions must be read and considered as a whole and when this instruction is read and considered in conjunction with other instructions given, particularly with Instructions 6 and 17, we think the deficiency complained of by appellant was supplied by such other instructions and the jury were not misled by the instruction complained of. In addition, appellant did not request an instruction supplying the alleged deficiency. If a party desires other instructions than those given by the court, the same must be requested or no error can be predicated thereon. (*Lessman v. Anschustigui*, 37 Ida. 127, 215 Pac. 460; *Joyce Brothers v. Stanfield*, 33 Ida. 68, 189 Pac. 1104.)

The judgment is affirmed. Costs awarded to respondents.

Lee, C. J., and Givens, Varian and McNaughton, JJ., concur.

ON PETITION FOR REHEARING.

(November 19, 1931.)

BUDGE, J.—By petition for rehearing, appellant for the first time calls attention to a fourth case decided by this court involving a contract containing provisions similar to those involved here: *Pacific States A. F. Corp. v. Addison,* 45 Ida. 270, 261 Pac. 683. Appellant insists that the rule announced in that case is contrary to the rule announced in the instant case and is controlling. However, there is a clear distinction between the two cases. In the Addison case, *supra,* fraud in the inception of the contract—the basis of the rule announced here—was not sufficiently proven; the alleged fraudulent misrepresentations did not relate to the subject matter of the contract but concerned an incident of the contract practically unrelated to it; and the alleged fraudulent misrepresentations were promissory in their nature and related to future actions and could not be made the basis of a defense of fraud.

The petition for rehearing is denied.

Lee, C. J., and Givens, Varian and McNaughton, JJ., concur.